The STATE of Ohio, Appellee,

v.

KOBI, Appellant.

[Cite as *State v. Kobi* (1997), 122 Ohio App.3d 160.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–96–025.

Decided Aug. 1, 1997.

164

*William R. Swigart*, Fulton County Prosecuting Attorney, and *Roger D. Nagel*, Assistant Prosecuting Attorney, for appellee.

*Alan J. Lehenbauer*, for appellant.

*Per Curiam.*

This matter is before the court on appeal from the Fulton County Court of Common Pleas wherein appellant, Daryl G. Kobi, was found guilty by a jury of aggravated trafficking, drug abuse, having a weapon under disability, and possession of criminal tools. He was sentenced to an indefinite term of six to twenty-five years with five years of actual incarceration. He received a one-year

sentence on each of the remaining counts. All sentences were ordered served consecutively. Appellant now appeals setting forth the following assignments of error:

"I. The trial court erred as a matter of law by not granting appellant's motion to suppress.

"II. The trial court erred to the prejudice of appellant by denying his motion to sever the counts in the indictment.

"III. The trial court committed prejudicial error and plain error by allowing the state to introduce testimony of appellant's alleged prior acts in violation of Evid. Rule 404(B).

"IV. The trial court erred to the prejudice of appellant in allowing the state to present testimony against appellant that was inadmissible under Evid.R. 403(A).

"V. The trial court erred by failing to grant appellant's motion to acquit after the close of the state's case against him.

"VI. The failure of the state to disclose evidence favorable to appellant constitutes a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and the trial court erred in failing to grant a mistrial.

"VII. The trial court erred to the prejudice of appellant and committed plain error by failing to give a limiting instruction to the jury as to certain evidence presented by the state.

"VIII. The cumulative effect of the various errors committed in appellant's trial denied him due process of law and a fair trial as guaranteed by the Fourteenth Amendment to the U.S. Constitution and the Ohio Constitution.

"IX. Appellant's convictions under R.C. 2925.03(A)(5), 2925.11(A), 2923.13(A)(3), and 2923.24(A) were against the manifest weight of the evidence.

"X. The trial court erred to the prejudice of appellant in sentencing appellant, committed plain error in sentencing appellant and abused its discretion in sentencing appellant.

"XI. Appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution and Article One, Section 10 of the Ohio Constitution."

In his first assignment of error, appellant contends that the court erred in denying his motion to suppress.

When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. *State v. Clary* (Sept. 30, 1996),

Lawrence App. No. 96CA7, unreported, 1996 WL 560522, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 726–727. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143.

■ Appellant first contends that the trial court should have granted his motion to suppress based on the fact that the police lacked a reasonable, articulable suspicion to stop appellant's vehicle. Specifically, appellant contends that the stop was based on information from an unreliable police informant.

■ Where a police officer has a reasonable and articulable suspicion of criminal activity, the officer may make a brief, investigative stop. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Such a stop is justified if the "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The "specific and articulable facts" need not result from the officer's personal observations but, rather, may be based on information from a known informant. *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. Drug activity and criminal activity in general are articulable facts that factor into the totality of the circumstances to investigate suspicious behavior. *State v. White* (1996), 110 Ohio App.3d 347, 353, 674 N.E.2d 405, 409, citing *State v. Andrews* (1991), 57 Ohio St.3d 86, 88, 565 N.E.2d 1271, 1273–1274.

On September 22, 1995, Deputy David Dick of the Fulton County Sheriff's Department stopped appellant in his vehicle. At a suppression hearing, Deputy Dick testified that he stopped appellant's vehicle based on the following facts. On September 13, 1995, he received a call from a woman he knew, Tracy Nations, who identified appellant as a cocaine dealer. On September 22, 1995, Deputy Dick again received a call from Nations indicating that it was a good time to arrest appellant, as he was in possession of illegal narcotics. That day, the authorities set up a controlled drug buy in which Nations participated. Specifically, Nations contacted appellant and told him that she wanted to buy cocaine from him. Appellant agreed to meet Nations outside her residence for the sale. At the time appellant was to arrive at Nations's residence, a sheriff surveilling the area saw him driving in her neighborhood. It was then that Deputy Dick was dispatched to stop appellant's vehicle.

Deputy Dick testified that Nations had, in the past, given him reliable information regarding a criminal investigation. Though Deputy Dick was unable to recall the specifics of the information, he did remember that it had been approximately seven years since he last heard from Nations. Nations was an admitted cocaine user who claimed that she regularly bought narcotics from appellant. Nations claimed that recently, appellant had harassed her for cocaine money she owed to him. Nations had appellant's phone number memorized and accurately identified the make and model of appellant's vehicle. Based on Nations's past reliability and her specific knowledge of the defendant and the crime, we conclude that an investigative *Terry* stop of appellant was justified.

Appellant next contends that Deputy Dick lacked probable cause to arrest him. Probable cause for a warrantless arrest exists when the arresting officer has within his knowledge facts and circumstances that amount to reasonable and trustworthy information sufficient to warrant a prudent man in believing that a crime or offense had been or is being committed and that the person to be arrested is the probable offender. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

The factors relevant to this inquiry can be found in the September 22, 1995 affidavit Deputy Dick swore out in an effort to obtain a search warrant for appellant's home. Deputy Dick stated as follows. On September 13, 1995, he received information from a reliable informant that appellant was selling cocaine. On September 22, 1995, the informant once again contacted the deputy at approximately 10:00 a.m. and told him that it was likely that appellant had cocaine for sale that very day. The informant based her information on the fact that appellant had traveled to Detroit, Michigan the day before with the intention of purchasing cocaine.

Deputy Dick also stated that he spoke to Patrolman Wisecup of the Multi–Area Narcotics Task Force ("MAN"), who informed him that he was with the informant on September 22, 1996 at approximately noon when she called appellant on the telephone in an attempt to arrange a controlled drug purchase. As appellant did not answer, the informant left a message for appellant to call her. Minutes later, the informant's phone rang, and she referred to the caller by appellant's name. The informant told the caller that her friend had $700 to spend. Appellant told the informant that he had both powdered and "rock" cocaine. Appellant and the informant arranged to meet outside the informant's residence in ten minutes. According to the informant, appellant was bringing four "8–balls" or fourteen grams of cocaine. Appellant specifically stated he did not want to meet the informant's "friend."

Deputy Dick next spoke to Sheriff Merillat of the Fulton County Sheriff's Department, who was conducting undercover surveillance in the area around the

informant's residence on September 22, 1995. Sheriff Merillat told the deputy that soon after the informant arranged to meet appellant outside her residence, appellant drove by the area but did not stop his vehicle. Merillat speculated that appellant did not stop because the informant was not outside her residence as she had arranged. After Deputy Dick was told that appellant had failed to stop his vehicle in front of the informant's residence, the deputy stopped appellant in his vehicle and arrested him for offering to sell cocaine. Based on the facts and circumstances known to Deputy Dick at the time he arrested appellant, we conclude that Deputy Dick had probable cause to believe that appellant had committed a crime, to wit, R.C. 2925.03(A)(1), trafficking in drugs.

██ Appellant next contends that the search warrants relied upon in this case did not establish probable cause. Specifically, appellant contends that the affidavits were "bare bones" affidavits or merely provided conclusory statements.

In *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, the Ohio Supreme Court stated:

"In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [1983], 462 U.S. 213, 238–239 [103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548] followed.)"

██ Absent any indication as to the reliability of the confidential informant, a finding of probable cause to search may not be predicated solely upon information obtained from a confidential informant. *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301.

Appellant argues that the affidavits contained insufficient, conclusory statements regarding the informant's credibility. We disagree. In the affidavits, a law enforcement officer vouched for the informant's credibility and stated that she had given reliable information in the past. The affidavits detailed the informant's participation in the recent controlled drug buy, wherein it was shown that appellant knew appellant and knew some of his habits. Finally, the informant accurately predicted appellant's imminent arrival in her neighborhood.

██ Appellant next contends that the police seized items beyond the scope of the search warrants. The first search warrant listed the items to be seized as follows:

"Cocaine, United States Currency derived from the sale of controlled substances, records and other documents depicting the purchase or sale of controlled substances, electronically stored records pertaining to the sale and purchase of controlled substances, instrumentalities and paraphernalia used to weigh and use controlled substances and relating to the packaging, distribution and/or delivery of controlled substances, records showing the person or persons who reside at the residence at 308 N. Madison Street, Delta, Fulton County, Ohio."

Appellant contends that the following items were seized outside the scope of the search warrant: (1) books, (2) a transmitter, (3) any items containing a white powder residue, and (4) guns.

Evidence not specifically described in a search warrant may be validly seized if, based on evidence known to the officers, the seized items were closely related to the crime being investigated or were instrumentalities of the crime. *State v. McGettrick* (1988), 40 Ohio App.3d 25, 29, 531 N.E.2d 755, 759–760.

Deputy Dick testified that the books seized from appellant's residence were essentially instruction manuals on trafficking in illegal drugs. One of the books contained information on how someone could detect a body wire on an undercover police officer. Officer Wisecup testified that he seized a transmitter from the premises because he believed its purpose was to detect body wires on other people. Sergeant Robert Albright of the Fulton County Sheriff's Department testified that he seized items containing a white powder residue because, based on his experience in trafficking investigations, he believed the residue to be cocaine. Finally, Deputy Todd Pringle of the MAN task force testified that he seized guns from appellant's residence for the protection of the other officers. Based on the foregoing testimony, we conclude that the officers did not unlawfully seize items beyond the scope of the search warrant. Appellant's first assignment of error is found not well taken.

In his second assignment of error, appellant contends that the trial court erred in denying his motion to sever counts in the indictment.

To prevail on a claim that the trial court erred in denying a motion to sever, the defendant has the burden of demonstrating three facts: (1) that his rights were prejudiced, (2) that at the time of the motion to sever the trial court was provided with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus.

Appellant essentially contends that he was prejudiced in that the jury was incapable of segregating the evidence as to each count. "This essential problem is not generally held to be present, however, where the evidence relative to the various charges is direct and uncomplicated, so that the jury is believed capable of segregating the proof on each charge." *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204–205, 405 N.E.2d 247, 251.

Appellant was indicted for trafficking in drugs, possession of drugs, having weapons while under a disability, possession of criminal tools, and intimidation. The state's evidence showed that appellant, a previous drug offender, offered to sell cocaine. This action ultimately led to the execution of a search warrant in appellant's residence. The lawful search yielded cocaine, instruments used in the trafficking of cocaine, and guns. Appellant then threatened physical violence against Tracy Nations for her role in alerting the police. Finding this evidence to be direct and uncomplicated, we conclude that the court did not abuse its discretion in denying appellant's motion to sever. Accordingly, appellant's second assignment of error is found not well taken.

In his third assignment of error, appellant contends that the court erred in allowing Tracy Nations to offer testimony on appellant's prior bad acts.

The admission and exclusion of evidence rest within the sound discretion of the trial court, and a reviewing court must not disturb the trial court's decision absent a clear abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. An abuse of discretion involves more than an error of judgment or law; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148.

Evid.R. 404(B) states:

"Other crimes, wrongs or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Tracy Nations testified that she had used cocaine for approximately ten years. She explained to the jury how she obtained cocaine.

"I would call—I'd call [appellant], say I need a six-pack of soft ice cream, or I need a six-pack of hard ice cream. And I'd meet him and just pick it up. I'd give him the money, and he'd give it to me, the dope."

Nations testified that a "six-pack" was a "sixteenth" of cocaine. She testified she had been to appellant's residence many times to buy cocaine. Nations testified that on more than one occasion she had accompanied appellant on a cocaine delivery. She testified that she had regularly seen firearms in appellant's residence. Nations described, in detail, the drug paraphernalia she had seen in appellant's residence. She also testified that she often sold cocaine to other people for appellant.

We conclude that the foregoing testimony was within the exceptions of Evid.R. 404(B). Nations's testimony showed her knowledge of appellant's drug trafficking practices. Accordingly, the court did not abuse its discretion in admitting this testimony, and appellant's third assignment of error is found not well taken.

In his fourth assignment of error, appellant contends that the court erred in allowing testimony otherwise inadmissible under Evid.R. 403(A). Evid.R. 403(A) states: "[A]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Appellant first contends that the court erred in admitting the testimony of Patrolman Wisecup, who was present when Nations contacted appellant by phone to arrange a controlled drug buy. Specifically, appellant contends that the court erred in allowing Wisecup to testify to the hearsay declarations made by Nations while she was on the phone with appellant.

"Not all out-of-court statements are hearsay, *e.g.,* some statements are merely verbal parts of acts and are, as the acts are themselves, admissible. However, in a criminal case, the potential for abuse in admitting such statements is great where the purpose is merely to explain an officer's conduct during the course of an investigation. Therefore, in order to admit out-of-court statements which explain an officer's conduct during the course of a criminal investigation, the conduct to be explained must be relevant, equivocal and contemporaneous with the statements. In addition, the statements must meet the standard of Evid. R. 403(A)." *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105, paragraph one of the syllabus.

"For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay. *State v. Thomas* (1980), 61 Ohio St.2d 223, 232 [15 O.O.3d 234, 239–240, 400 N.E.2d 401, 407–408]; *State v. Willis* (Dec. 15, 1981), Franklin App. No. 81AP–508, unreported, at 2, 1981 WL 3672; *State v. Robertson* (July 31, 1979), Franklin App. No. 78AP–584, unreported, at 14." *Blevins* at 149, 521 N.E.2d at 1108–1109.

Wisecup's testimony in this case is clearly offered to explain his investigatory conduct. Moreover, the phone conversation is clearly relevant and probative on

the issue of whether appellant agreed to sell cocaine to Nations on September 22, 1995. It follows that Wisecup's testimony was not hearsay.

Appellant next contends that testimony regarding a 1989 search of appellant's residence was irrelevant. This argument is also without merit, as the testimony was offered to rebut appellant's *own* assertion that many of the items seized from his residence in 1995 were the same items seized in a 1989 search of his residence. Appellant's fourth assignment of error is found not well taken.

In his fifth assignment of error, appellant contends that the court erred in denying his motion for acquittal. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

Appellant first contends that the state failed to prove that appellant offered to sell Nations cocaine. Tracy Nations testified that on the morning of September 22, 1995, appellant called her and said that he had a fresh supply of cocaine and that she should let him know whether she knew of anyone interested in buying some. This testimony was sufficient for reasonable minds to differ as to whether appellant offered to sell cocaine.

Next, appellant contends that the state failed to prove that he possessed cocaine. According to R.C. 2925.01(L): " 'Possess' or 'possession' means having control over a thing of substance, but may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Physical possession is not required. *State v. Pruitt* (1984), 18 Ohio App.3d 50, 58, 18 OBR 163, 171–172, 480 N.E.2d 499, 507–508; *State v. Bradley* (1971), 26 Ohio App.2d 229, 232, 55 O.O.2d 387, 389, 270 N.E.2d 654, 656–657. Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 269–270, 54 O.O.2d 379, 381–382, 267 N.E.2d 787, 790–791. To place a defendant in constructive possession, the evidence must demonstrate that the defendant was able to exercise dominion or control over the items. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 373–374, 348 N.E.2d 351, 360–361. Moreover, readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs. *State v. Pruitt, supra,* 18 Ohio App.3d 50, 18 OBR 163, 480 N.E.2d 499.

The state showed that at the time of the search, appellant lived with his parents. Although much of the contraband seized in the search of his residence was seized in appellant's bedroom, the cocaine was found directly outside appellant's bedroom. Officer Wisecup testified that he used a ladder to reach

into an attic trap door, in the ceiling, outside appellant's bedroom door. Just inside the trap door, Wisecup found a black box containing drug paraphernalia and cocaine. Because the cocaine was located in close proximity to appellant's bedroom, we conclude that reasonable minds could differ as to whether appellant constructively possessed cocaine.

■ Appellant also contends that the state failed to show that the books seized constituted criminal tools under R.C. 2923.24, which states:

"(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."

The following is a list of books seized in appellant's bedroom and subsequently listed in the indictment charging appellant with possession of criminal tools: (1) *The High Times Encyclopedia*, (2) *The Outlaw Bible*, (3) *Wiretapping and Electronic Surveillance*, (4) *The Criminal Use of False Identification*, (5) *How to Avoid Electronic Eavesdropping*, (6) *DEA Stash and Hideout Handbook*, and (7) *Full Auto Modification Manual*. The indictment also included "twelve miscellaneous books." Deputy Dick testified that the books provided information on how to successfully hide items, including ammunition, from detection. The books also instructed readers on the art of tapping into telephone lines and detecting body wires. Viewing these books in the context of the other items seized from the house (such as a digital scale commonly used in the narcotics trade, firearms, a radio transmitter, and crack pipes), we conclude that reasonable minds could differ as to whether the books were adapted for criminal use.

■ Finally, appellant contends that the state failed to show that appellant possessed criminal tools. Appellant contends that, if anything, the state proved the elements of R.C. 2925.14, possession of drug paraphernalia, a misdemeanor. At this point in our review, we are concerned only with whether reasonable minds could differ as to the state's proof that appellant possessed criminal tools. At the close of the state's case, evidence had been presented, in the form of testimony from police officers experienced in drug investigation, that the items seized were

intended and/or specially adapted for criminal use. Accordingly, appellant's fifth assignment of error is found not well taken.

In his sixth assignment of error, appellant contends that the court erred in denying his motion for a mistrial. Appellant's basis for a mistrial was the state's failure to disclose favorable evidence.

Generally, a motion for a mistrial pursuant to Crim.R. 33 is within the sound discretion of the trial court and will not be reconsidered on appeal unless there is an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Crim.R. 16, the discovery rule, states:

"(A) Demand for discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure.

"\* \* \*

"(C) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant.

"\* \* \*

"(e) Witness names and addresses; record. Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies to the court that to do so may subject the witness or others to physical or substantial economic harm or coercion. Where a motion for discovery of the names and addresses of witnesses has been made by a defendant, the prosecuting attorney may move the court to perpetuate the testimony of such witnesses in a hearing before the court, in which hearing the defendant shall have the right of cross-examination. A record of the witness' testimony shall be made and shall be admissible at trial as part of the state's case in chief, in the event the witness has become unavailable through no fault of the state.

"(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection."

On October 6, 1995, appellant filed a demand for discovery wherein he sought, among other things, "all evidence favorable to the accused." At the end of trial testimony, appellant was made aware, for the first time, that Tracy Nations had previously been accused of theft. Specifically, the state possessed a Lucas County Sheriff's Department report dated September 25, 1995, which alleged that Nations had stolen six guns from a residence where she was watching dogs for the absent resident. Nations was never charged with an offense as a result of this report. Appellant argues that this evidence was exculpatory to him in that it directly affected the credibility of Nations. The state argued that it was under no duty to disclose the report because it in no way exculpated appellant and because the mere fact that someone *suspected* Nations of theft did not damage her credibility.

The Ohio Supreme Court, in *State v. Joseph* (1995), 73 Ohio St.3d 450, 458, 653 N.E.2d 285, 293, stated: "[P]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect. *State v. Parson* (1983), 6 Ohio St.3d 442, 445 [6 OBR 485, 488, 453 N.E.2d 689, 691–692]. See, also, *State v. Moore* (1988), 40 Ohio St.3d 63, 66 [531 N.E.2d 691, 694–695]."

There is nothing in the record to indicate that the prosecutor's failure to disclose the sheriff's report was willful. The prosecutor explained that he put little faith in the truthfulness of the accusation in that no follow-up investigation was conducted and no charges were filed. While it is true that much of the case against appellant rests on the credibility of Tracy Nations, we fail to see how an unsubstantiated allegation against her would have damaged her credibility to the point of changing the outcome of this trial. Finding that appellant suffered no prejudice as a result of the state's failure to disclose the sheriff's report, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Appellant's sixth assignment of error is found not well taken.

In his seventh assignment of error, appellant contends that the court erred in failing to give the jury a more restrictive limiting instruction with regard to the testimony addressing appellant's past acts. The jury in this case was

instructed that appellant's prior bad acts "may not be considered as any evidence of the Defendant's character, nor may they be considered as any evidence that the defendant acted in conformity therewith." Appellant in this case did not object to the jury instruction.

The Ohio Supreme Court has held that notice of plain error is to be taken with utmost caution and only in exceptional cases to prevent a manifest miscarriage of justice. *State v. Adams*, 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. Reversal is warranted under this standard only when the outcome of the trial clearly would have been different without the alleged error.

Because of the other evidence in this case, appellant has been unable to show that the outcome of the trial would have been different if the jury's limiting instruction had been more restrictive. Accordingly, appellant's seventh assignment of error is found not well taken.

In his eighth assignment of error, appellant contends that the cumulative effect of the various errors denied him due process of law and a fair trial. In that we have found the first seven assignments of error not well taken, we similarly find the eighth assignment of error not well taken.

In his ninth assignment of error, appellant contends that his convictions for trafficking in drugs, drug abuse, having a weapon while under a disability, and possession of criminal tools were against the manifest weight of the evidence.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

Determinations of witness credibility are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. A judgment of conviction shall not be reversed upon appeal unless it can be said that the trier of fact lost its way or created a miscarriage of justice. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

The elements of R.C. 2925.03(A)(5), aggravated trafficking in drugs, are as follows:

"(A) No person shall knowingly do any of the following:

"* * *

"(5) Sell or offer to sell a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount[.]"

"Bulk amount" is defined in R.C. 2925.01(E)(1) as "[a]n amount equal to or exceeding ten grams * * * of a compound, mixture, preparation, or substance that is or contains * * * cocaine." In the present case, Tracy Nations testified that appellant offered to sell her fourteen grams of cocaine.

The elements of R.C. 2925.11(A), drug abuse, are as follows: "No person shall knowingly obtain, possess, or use a controlled substance." "Controlled substance" is defined in R.C. 3719.01 as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.41 lists cocaine as a Schedule II substance.

As discussed earlier, the police officers testified that appellant "constructively" possessed a substance later determined by a forensic scientist to be cocaine.

The elements of R.C. 2923.13(A)(3), having weapons while under disability, are as follows:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"* * *

"(3) Such person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of any such offense."

The evidence in this case shows that, at the time the search warrant was executed, appellant was in constructive possession of more than one weapon. It was an undisputed fact at trial that appellant had previously gone to prison for trafficking in drugs.

In sum, we have carefully reviewed the record in this matter and find that there was evidence presented which, if believed by the jury, would establish the essential elements of trafficking in drugs, drug abuse, and having weapons while under a disability proved beyond a reasonable doubt.

 Appellant raises a somewhat different issue when arguing that his conviction for possession of criminal tools was against the manifest weight of the evidence. Specifically, appellant contends that if the evidence presented by the state was believed by a jury, he could only be found guilty of a misdemeanor

offense. Once again, the elements of R.C. 2923.24, possession of criminal tools, are as follows:

"(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."

Possession of criminal tools is a fourth-degree felony.

Appellant contends that, if anything, he should have been convicted of possessing drug paraphernalia, a misdemeanor of varied degrees and a violation of R.C. 2925.14. The pertinent portion of this statute defines "drug paraphernalia" as "any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance in violation of this chapter."

R.C. 1.51 provides as follows:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

The above version of R.C. 2923.24, possession of criminal tools, applicable to appellant's case, became effective on January 1, 1974. The above version of R.C. 2925.14, possession of drug paraphernalia, applicable to appellant's case, became effective on July, 21, 1994. Appellant argues that the later-adopted, special provision prohibiting drug paraphernalia should prevail in his case.

This issue was addressed by the Second District Court of Appeals in *State v. Susser* (Mar. 2, 1992), Montgomery App. No. 12745, unreported, 1992 WL 41834. Susser was convicted of possessing criminal tools. The tools consisted of "a pipe, a vial containing white residue, a brass type funnel, and a brown bottle containing

white residue" believed to be cocaine. (See *State v. Susser* [Dec. 5, 1990], Montgomery App. No. 11787, unreported, 1990 WL 197958.) Susser argued that he should be sentenced only for a misdemeanor offense. The appellate court agreed.

"There can be no doubt that the 'criminal tools' that Susser was found to have possessed were 'drug paraphernalia' as defined in R.C. 2925.14(A) * * * It is clear that 'drug paraphernalia' is a subcategory of 'criminal tool' and that R.C. 2925.14(C)(1) specially proscribes the possession of drug paraphernalia whereas R.C. 2923.24(A) generally proscribes the possession of any criminal tool."

This court applied the *Susser* reasoning in *State v. Wagner* (Oct. 28, 1994), Sandusky App. No. S–93–40, unreported, 1994 WL 590537. Wagner was convicted of one count of trafficking in marijuana and one count of possession of criminal tools. The "tools" at issue were a tool chest where marijuana was stored, two freezers also used for marijuana storage, and scales used for weighing marijuana. On appeal, Wagner argued that he should have been convicted only of possessing drug paraphernalia. This court found Wagner's argument well taken and remanded the case for resentencing.

In *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832, the court compared possession of criminal tools with the offense of possessing drug abuse instruments in violation of R.C. 2925.12(A). That statute states:

"No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use."

The court vacated Chandler's conviction for criminal tools. The tools at issue were syringes. The court held in its syllabus:

"Because R.C. 2925.12(A) was clearly enacted to reach criminal possession and control of a syringe and classified such conduct as a misdemeanor of the second degree under R.C. 2925.12(C). R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling a syringe." *Id.*

The indictment in the present case charged appellant with possessing the following criminal tools: (1) a radio frequency interference detector, (2) digital scales, (3) Harley Davidson coffee mug, (4) one clear glass jar and one black and

white vase with a lid, and (5) numerous books amounting to instruction manuals on successful drug trafficking.

Deputy Dick testified that the transmitter was easily adapted to an illegitimate use by drug traffickers. Traffickers were known to use transmitters to detect body wires on their customers. Thus, traffickers could determine whether a customer was really an undercover police officer wearing a body wire in an effort to tape an illegal transaction. Deputy Dick testified that the coffee mug, the glass jar, and the vase appeared to contain the white residue of cocaine. This led Deputy Dick to assume that the objects, though capable of legitimate use, had been adapted to an illegitimate use. Lieutenant Wood of the MAN task force testified that he conducted a field test on the coffee mug and that it tested positive for cocaine, as did one of the scales. Lieutenant Wood testified that scales are commonly found in the homes of people suspected of selling narcotics. As for the books, the officers testified that, alone, the books could not be considered criminal tools. However, when viewed in the context of the other items seized, and based on the officers' experience in drug investigations, they believed that the books were being adapted for use in an illegal enterprise.

We conclude that appellant's conviction for possessing criminal tools was against the manifest weight of the evidence. Following the reasoning of *Susser*, we find that appellant could be convicted only of possessing drug paraphernalia.

Accordingly, appellant's ninth assignment of error is found not well taken as to appellant's conviction for trafficking in drugs, drug abuse, and having a weapon while under a disability. Appellant's ninth assignment of error is found well taken as to appellant's conviction for possessing criminal tools.[1]

In his tenth assignment of error, appellant contends that the court imposed erroneous sentences for his violations of R.C. 2925.03 and 2923.24. Having already determined that appellant's R.C. 2923.24 conviction was in error, we limit our review to appellant's sentence for violating R.C. 2935.03.

On July 1, 1996, R.C. 2925.03 was amended. R.C. 1.58 states: "(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

Appellant was sentenced to serve six to twenty-five years in prison. Five of those years were to be served as actual incarceration. Under the amended version of R.C. 2925.03, appellant's offense would be classified a third-degree felony.

---

1. We note, for purposes of the tenth assignment of error dealing with ineffective assistance of counsel, that appellant's attorney raised this issue in the trial court.

Appellant's argument fails because of 1995 Am.Sub.S.B. No. 2, Section 5, which states:

"The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and, *notwithstanding division (B) of Section 1.58 of the Revised Code,* to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, imposes a term of imprisonment for an offense that was committed prior to that date.

"The provisions of the Revised Code in existence on and after July 1, 1996, apply to a person who commits an offense on or after that date." (Emphasis added.) 146 Ohio Laws, Part IV, 7810, as amended by Am.Sub.S.B. No. 269, Section 3, 146 Ohio Laws, Part VI, 11,099.

Appellant next contends that the court erred in imposing a mandatory fine. R.C. 2925.03(L) provides:

"No court shall impose a mandatory fine pursuant to division (H) of this section upon an offender who alleges in an affidavit filed with the court prior to sentencing that he is indigent and is unable to pay any mandatory fine imposed pursuant to that division, if the court determines that the offender is an indigent person and is unable to pay the fine." See, also, R.C. 2925.11(E)(5).

Appellant did not file an affidavit of indigency before sentencing, though he did file one for purposes of obtaining counsel in the beginning stages of this case. However, an affidavit filed pursuant to R.C. 2925.03(L) is not the same as an indigency affidavit filed only for the purposes of receiving court-appointed counsel. *State v. Brown* (June 6, 1990), Summit App. No. 14375, unreported, 1990 WL 77140. Assuming, *arguendo,* that appellant had filed a timely affidavit pursuant to R.C. 2925.03(L) and 2925.11(E)(5), appellant has not shown that the trial court would have ruled in his favor. Accordingly, appellant's tenth assignment of error is found not well taken.

In his eleventh and final assignment of error, appellant contends that he was denied effective assistance of counsel.

The standard for evaluating an ineffective-assistance-of-counsel claim was enunciated by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, as follows:

"2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391 [2 O.O.3d 495, 358 N.E.2d 623];

*Strickland v. Washington* [1984], 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.)

"3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

Further, there is " 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Bradley, supra,* 42 Ohio St.3d at 142, 538 N.E.2d at 379–380, quoting *Strickland, supra,* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695. Ohio presumes that a licensed attorney is competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164. Counsel will not be deemed ineffective merely because a defendant is convicted and not acquitted. *State v. Hunt* (1984), 20 Ohio App.3d 310, 311, 20 OBR 411, 412–413, 486 N.E.2d 108, 109–110.

We have thoroughly reviewed the transcript from the trial below in light of appellant's arguments and find no omissions or commissions by appellant's trial counsel that rise to the level of ineffectiveness. Accordingly, appellant's eleventh assignment of error is found not well taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Fulton County Court of Common Pleas is affirmed in part and reversed in part as to Assignment of Error No. 9 as it relates to appellant's conviction for possessing criminal tools. This cause is remanded to that court for further proceedings consistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment accordingly.*

MELVIN L. RESNICK, P.J., GLASSER and KNEPPER, JJ., concur.