DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Bowling Green Municipal Court, which granted appellee Jill Berry's motion to suppress evidence. Because we find that the police officer did not have reasonable articulable suspicion to warrant stopping appellee's vehicle, we find that the decision of the Bowling Green Municipal Court should be affirmed.
 {¶ 2} On June 2, 2002, at approximately 1:00 a.m., Officer Jeffrey Lowery of the Bowling Green Police Department observed a car exiting a municipal parking lot at a place where "Do Not Exit" signs had been posted. Officer Lowery stopped the vehicle and spoke with its driver, who was later identified as appellee. Lowery asked appellee for her driver's license, registration, and proof of insurance. As Lowery continued talking with appellee, he noticed a "slight to moderate" odor of consumed alcoholic beverage. Lowery then began investigating the case for a Driving While Under the Influence of Alcohol ("DUI") charge. Appellee was subsequently arrested for DUI, and once at the police station, she took a breath test and tested over the legal limit. She was charged with: (1) DUI; (2) driving with a prohibited alcohol concentration; (3) driving with a suspended license; and (4) failure to obey a traffic control device.
 {¶ 3} Appellee moved the trial court to suppress evidence from the stop, arguing that the "Do Not Exit" sign was unenforceable since it was not a sign recognized in the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). The state agrees that the sign did not conform to the OMUTCD. Therefore, the only issue before the trial court was whether the stop was nonetheless valid given that Lowery did not know that the sign was unenforceable when he stopped appellee. The trial court granted the motion to suppress, finding that the sign was not one recognized by the OMUTCD and that, according to Lowery's testimony, the sign was placed three to five feet from the ground instead of six to seven feet, as required by the OMUTCD. Since the officer had no basis to stop appellee other than the sign, the trial court held that Lowery did not have reasonable, articulable suspicion to stop appellee, and the court therefore granted the motion to suppress. Appellant now appeals, setting forth the following assignment of error:
 {¶ 4} "The trial court erred in ruling that failure to comply with a sign not in compliance with the Regulations of the Ohio Manual of Uniform Traffic Control Devices will not provide enough reasonable suspicion to support a traffic stop."
 {¶ 5} Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Davis (1999),133 Ohio App.3d 114, 117. Since a trial court deciding the motion to suppress acts as a fact-finder, an appellate court must accept the trial court's findings of fact as true if supported by competent, credible evidence. State v. Kobi (1997), 122 Ohio App.3d 160, 167-168. However, an appellate court reviews December novo the trial court's application of the law to the facts. Id. In this case, since the parties agreed on the facts, the trial court was not required to make any factual findings. Therefore, we are left with a December novo review of the trial court's ruling that a sign not conforming to the OMUTCD will not provide reasonable, articulable suspicion to support a traffic stop.
 {¶ 6} The Fourth Amendment to the United States Constitution prohibits unlawful seizures of individuals. However, a police officer may constitutionally effect an investigatory stop of an individual when the officer has reasonable suspicion based on "specific and articulable facts" that the individual is engaging in criminal behavior. State v.Andrews (1991), 57 Ohio St.3d 86, 87; Terry v. Ohio (1968), 392 U.S. 1,21. The United States Supreme Court in Terry noted that any standard requiring less would "invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches * * *."
 {¶ 7} R.C. 4511.12 provides, in pertinent part:
 {¶ 8} "No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. * * *." Thus, in order to form the basis for criminal liability, the sign must be "official", and it must be in a "proper position" and "sufficiently legible." See City of Maple Heights v. Smith (1999),131 Ohio App.3d 406, 410.
 {¶ 9} Courts, including this one, have previously held that one may not be convicted of violating a sign that is not in conformity with the OMUTCD. See In re Tolliver, 149 Ohio App.3d 403, 2002-Ohio-4538, at ¶¶ 14-16; City of Lyndhurst v. McGinness (2000), 138 Ohio App.3d 617,621; Maple Heights, 131 Ohio App.3d at 410; City of Bowling Green v.McNamara (1999), 132 Ohio App.3d 240, 242. Clearly, then, one is not engaged in criminal behavior by violating a non-conforming sign.
 {¶ 10} Nevertheless, appellant contends that Lowery reasonably believed that appellee was violating the law. According to appellant, Lowery did not know that the "Do Not Exit" sign was not conforming, and he had written several tickets to others who exited the parking lot in violation of the sign. We find this argument unpersuasive. Police officers are charged with enforcing the laws of Ohio. They must therefore be aware of which conduct does and does not constitute a violation of the law. An officer's ignorance of the law cannot be considered "reasonable" under the reasonable and articulable requirement for effecting an investigatory stop. For this reason, we find that Lowery did not have reasonable suspicion based on specific and articulable facts that appellee was engaged in criminal activity. Therefore, Lowery's stop of appellee was impermissible, and evidence gained as a result of that stop must be suppressed.
 {¶ 11} Our decision should not be misinterpreted as saying that anytime an officer stops a driver for an offense for which the offender may ultimately be acquitted, the officer did not have reasonable, articulable suspicion to stop the offender. We have, in fact, held otherwise. In State v. Nickelson, where a driver was stopped in front of the doors to a bowling alley in such a way as to impede traffic, we held that the officer had reasonable, articulable suspicion that the driver was violating an ordinance making it illegal to "recklessly" cause inconvenience to another by, inter alia, hindering the movement of persons by an act serving no "lawful" or "reasonable" purpose. See Statev. Nickelson (Jul. 20, 2001), Huron App. No. H-00-036, construing Norwalk Municipal Code 509.03. We noted that, while reasonable people could argue over whether the driver's actions were "reckless" and done for no "lawful" or "reasonable" purpose, the officer did not need to prove beyond a reasonable doubt that the driver was violating the statute; he needed only reasonable suspicion that the driver was violating the ordinance. We held that the officer had such reasonable suspicion under those circumstances.
 {¶ 12} We hold in today's decision that the officer could not have had reasonable, articulable suspicion that appellee was violating the law because the sign was a nullity — it does not exist under Ohio law. For these reasons, appellant's assignment of error is found not well-taken.
 {¶ 13} Upon due consideration, we conclude that substantial justice was done the party complaining, and the decision of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and Judith AnnLanzinger, J., concur.