DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Bowling Green Municipal Court, which denied appellant Michael Lavalette's motion to suppress evidence. Because we find that the trial court did not err in ruling on the motion to suppress, we affirm the decision of the trial court.
 {¶ 2} On February 15, 2002, at approximately 3:00 a.m., Bowling Green State University Police Officer Scott Sauer noticed a 1994 Nissan Ultima with older-style, somewhat rusted blue and white license plates. Appellant was driving the Nissan. Officer Sauer was curious about whether those plates actually belonged on that car, and he radioed in with the plate numbers. His dispatcher returned to him with information that the plates did not belong on a Nissan but on a Ford. Officer Sauer then pulled appellant over and began to approach appellant's car.
 {¶ 3} As Officer Sauer drew closer to the car, he noticed that the plate number was one character different than the one he called in, and he radioed the correct number to the dispatcher. The record creates an inference that Sauer read the plate incorrectly because of the rust, as he subsequently gave appellant a "verbal" warning for improper display of the plate. Just seconds after he called in the correct number, but before he received an answer back from the dispatcher, Sauer approached appellant's car and began to speak with him.
 {¶ 4} After detecting an odor of a consumed alcoholic beverage, Sauer began investigating the case for a possible Driving While Under the Influence of Alcohol ("DUI") charge, and appellant was subsequently arrested for DUI. Once at the police station, appellant submitted to a breath test and he tested over the legal limit. Appellant was ultimately charged with DUI and driving with an alcohol concentration of greater than .10.
 {¶ 5} Appellant moved the trial court to suppress the evidence gained from the stop. The trial court denied the motion. Appellant pleaded no contest to the charge, and the trial court found him guilty. Appellant now appeals, setting forth the following assignment of error:
 {¶ 6} "The trial court erred by failing to suppress the fruits of an illegal search and seizure pursuant to the standard set forth by the Ohio Supreme Court in State v. Chatton." (Citation omitted.)
 {¶ 7} Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Davis (1999),133 Ohio App.3d 114, 117. Since a trial court deciding the motion to suppress acts as a fact-finder, an appellate court must accept the trial court's findings of fact as true if supported by competent, credible evidence. State v. Kobi (1997), 122 Ohio App.3d 160, 167-168. However, an appellate court reviews de novo the trial court's application of the law to the facts. Id.
 {¶ 8} The Fourth Amendment to the United States Constitution prohibits unlawful seizures of individuals. However, a police officer may constitutionally effect an investigatory stop of an individual when the officer has reasonable suspicion based on "specific and articulable facts" that the individual is engaging in criminal behavior. State v.Andrews (1991), 57 Ohio St.3d 86, 87, certiorari denied (1991),501 U.S. 1220; Terry v. Ohio (1968), 392 U.S. 1, 21. The United States Supreme Court in Terry noted that any standard requiring less would "invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches * * *."
 {¶ 9} Appellant contends in his sole assignment of error that the stop was illegal because, once Sauer noticed that he had called in the wrong plate number, he should not have approached the car to ask for appellant's license and registration. Appellant points to State v.Chatton (1974), 11 Ohio St.3d 59, certiorari denied (1984), 469 U.S. 856, for support. The facts of Chatton are similar to the instant case. InChatton, the officer stopped defendant's car for failure to display a license plate. However, once the officer approached the car, he noticed a temporary tag in the back window. Nevertheless, the officer approached the driver's side of the car and requested defendant's driver's license. After the officer called in the license information, the dispatcher gave the officer the erroneous information that defendant's license was suspended. After placing defendant under arrest for driving with a suspended license, the officer searched the car and found a handgun.
 {¶ 10} The Ohio Supreme Court held in Chatton that once the officer realized that defendant had, in fact, displayed the temporary tag, defendant should have been free to go without having to produce his license. The court stated, "Although the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." Id. at 63.
 {¶ 11} The record is unclear about Sauer's purpose in approaching the vehicle before receiving information from the dispatcher based on the correct plates. It is also unclear whether Sauer first asked for appellant's license and then smelled alcohol or whether Sauer smelled alcohol and then asked for appellant's license. As to the first question, the prosecutor argued in closing argument that, pursuant toChatton, Sauer was entitled to approach the car to offer a "courtesy" explanation of why he stopped appellant. However, Sauer never testified that he was approaching the car to offer an explanation. As for the sequence of events, Sauer testified as follows:
 {¶ 12} "Q: [by prosecutor] Okay. What happened when you approached to talk to the defendant?
 {¶ 13} "A: When I approached and talked to the defendant, he put his window down. Typical [sic] I asked him for license, registration, and insurance.
 {¶ 14} "Q: What was the first thing that — what happened when that window was opened?
 {¶ 15} "A: I immediately smelled the odor of an alcoholic beverage."
 {¶ 16} Nevertheless, based on this somewhat confusing record, the trial court found that Sauer noticed the odor of alcoholic beverage before he asked appellant for his license. The trial court found as follows:
 {¶ 17} "Ptl. Sauer then called in the correct registration characters and proceeded to walk up to and talk to the driver [appellant]. With the defendant's window rolled down, Sauer could smell the odor of an alcoholic beverage coming from the vehicle. Sauer asked for the defendant's [appellant's] license, registration, and insurance paperwork. The defendant's actions were slow and lethargic."
 {¶ 18} The trial court therefore found that Sauer approached the car for an unspecified reason, smelled the odor of alcoholic beverage, and then asked appellant for his license. We cannot say that the trial court's findings as to the sequence of events is unsupported by competent, credible evidence. Accordingly, we must accept as true the facts as the court found them.
 {¶ 19} Applying the law to this set of facts, Sauer would have been permitted by Chatton to approach the car to offer an explanation for the stop. However, he could not have continued the investigation by asking for appellant's license unless he had further, independent reasonable and articulable suspicion that appellant was engaged in criminal behavior. Once Sauer smelled the alcoholic beverage, he did, in fact, have new and independent articulable suspicion that appellant was engaging in criminal behavior (DUI), and he was entitled to investigate for that.
 {¶ 20} Even disregarding the entire Chatton issue with the wrong license plate number, Sauer was entitled to stop appellant solely on the basis of the rusted license plate.[1] R.C. 4503.21 provides, in pertinent part:
 {¶ 21} "No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued under sections 4503.19 and 4503.191 * * *. All license plates shall be securely fastened so as not to swing and shall not be covered by any material that obstructs their visibility.
 {¶ 22} "* * *"
 {¶ 23} The fact that Sauer could not initially read the license plate number gave him reasonable, articulable suspicion that appellant was violating R.C. 4503.21. See State v. Warner (July 6, 1998), Highland App. No. 97 CA 943 (officer entitled to stop car where dirt obscured license plate number). Once Sauer stopped appellant for suspicion of this offense, he was entitled to ask appellant for his driver's license and to conclude his investigation of this offense. It does not matter if the R.C. 4503.21 violation was not the original purpose of the stop. The Ohio Supreme Court has held that an officer's subjective reasons for a stop are irrelevant; the only relevant inquiry is whether the officer couldhave stopped a motorist for this reason. Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12 ("we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.") Since Sauer could have validly stopped appellant for violating R.C. 4503.21, the stop is not unconstitutional.
 {¶ 24} For all of these reasons, we find appellant's sole assignment of error not well-taken.
 {¶ 25} Upon due consideration, we find that appellant was not prejudiced or prevented from having a fair trial, and the decision of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
Knepper, J., concurs. Singer, J., dissents.
[1] The license plate was admitted into evidence and it does, in fact, contain rust around the first and third letters.