DECISION AND JUDGMENT ENTRY
{¶ 1} The state of Ohio seeks accelerated appeal from the decision of the Erie County Court of Common Pleas, which granted Christopher Moore's motion to suppress. Because we conclude that the trial court did not err in its determination that the evidence from the search should be suppressed, we affirm the decision.
 {¶ 2} This case arose from an incident on July 6, 2001 involving Moore and Detectives Carl Johnson of the city of Vermilion Police and Vince Donald of the Perkins Township Police, members of the Erie County Drug Task Force. Johnson and Donald, along with Detectives Klamar and McConnell, were in an unmarked vehicle patrolling a "known drug area" in Sandusky, Ohio. About 10:00 p.m., they observed Moore driving north on Camp Street "at an extreme high rate of speed." Turning right onto Forest Drive, Moore squealed his tires, passed the officers' vehicle, and turned into the driveway at 1405 Forest Drive — sliding on loose gravel. Donald immediately backed up the police vehicle and drove part way into the driveway, partially blocking Moore's car. All four police officers left their vehicle while Moore was walking up the driveway toward the duplex where he lived. Donald and Johnson approached Moore; Klamar and McConnell stayed near the police vehicle.
 {¶ 3} Donald and Johnson announced they were police and showed Moore their badges. They did not draw their guns. Johnson "talked to [Moore] shortly about his driving, just asked him why he was operating his vehicle in that way." Moore was unresponsive, so Johnson gave him a verbal warning for reckless operation. He then asked Moore "if he had anything illegal on his person." Johnson then testified that Moore stated, "no, that he did not have anything illegal on his person" and that he "volunteered that I could check if I want to."
 {¶ 4} Based on this, Johnson did search Moore and found several empty bindles of what turned out to be heroin in his right rear pocket. Moore stated he did not know how they got there. When asked if he had a problem if his vehicle was searched, Moore said that the detectives "could go ahead and search the vehicle if [they] wanted to." More heroin was found, and Moore was arrested.
 {¶ 5} Detectives Donald and Johnson testified for the state at the suppression hearing. After the hearing, the court granted the motion, characterizing the encounter as a traffic stop. Te trial court reasoned that once Moore was warned about his driving, the incident should have been over. Since the police had admitted that Moore was not engaged in any illegal activity, any further inquiry under the circumstances was inappropriate. See, generally, State v. Robinette (1997),80 Ohio St.3d 234.
 {¶ 6} The state of Ohio appealed, alleging three assignments of error: 1.) "Whether the trial court erred in suppressing evidence when the encounter was a consensual encounter." 2.) "Whether the trial court erred in suppressing evidence when no illegal detention occurred." 3.) "Whether the trial court erred in suppressing evidence when appellee voluntarily consented to search."
 {¶ 7} In examining a motion to suppress ruling, a reviewing court recognizes the trier of fact must weigh the evidence and determine the credibility of the witnesses. State v. DePew (1988), 38 Ohio St.3d 275,277; State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Our function is to determine, after record review, whether the trial court ruling was supported by substantial evidence. Maumee v.Johnson (1993), 90 Ohio App.3d 169, 171. See, also, Maumee v. Hanley, 6th Dist. No. L-02-1301, 2003-Ohio-3426, at ¶ 21. Appellate review of a motion to suppress decision creates a mixed question of law and fact, however. State v. Davis (1999), 133 Ohio App.3d 114, 117. Therefore, while findings of fact must be accepted as true if supported by competent, credible evidence, State v. Kobi (1997), 122 Ohio App.3d 160,167-168, the trial court's application of the law to the facts must be reviewed de novo. Id. See, also, State v. Berry, 6th Dist. No. WD-02-043, 2003-Ohio-1620, at ¶ 5.
 {¶ 8} In its first assignment of error, the state argues the detectives had a "consensual" encounter with Moore — one that could have occurred in any public place. See, United States v. Mendenhall
(1980), 446 U.S. 544, 553-555. We disagree.
 {¶ 9} Detective Johnson described the incident as "a traffic, kind of a traffic stop, it was a consensual encounter in the driveway of the residence." In fact, he testified further that "[i]t was termed [a traffic stop] through Sandusky police's police report. We had to call it that just because there was nothing better to call it than that." And though Detective Donald could not remember exactly what was said to Moore, he testified, "I know what I was thinking: You idiot, what were you doing driving like that?" Testimony of the two officers state they approached Moore and stopped him solely because of his driving.[1]
 {¶ 10} These detectives, by their own terms, instigated this "traffic stop" to warn Moore about his driving. Consequently, after the detectives completed their purpose — giving the verbal warning for reckless operation — they should have ended the encounter; however, they continued to ask if Moore had anything illegal on him. This violated Robinette, supra, because when a search "is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." Robinette, at paragraph one of the syllabus. The state's first assignment of error is not well-taken.
 {¶ 11} The state, in its second assignment of error, argues that the encounter was not an illegal detention. Detective Donald testified that Moore was free to leave at any time while he was being questioned and could have chosen not to answer. He further asserted that Moore could have easily walked into his duplex or gotten back into his car. Again, we do not agree, based upon the specific facts of this case and on the basis of Robinette. Under the totality of the circumstances — four uncover detectives partially blocking the driveway where Moore's car was parked, all leaving the unmarked vehicle, two displaying their badges and confronting Moore as he walked toward his residence — it was not "clearly demonstrate[d] that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." Id, at paragraph three of the syllabus. The state's second assignment of error is not well-taken.
 {¶ 12} Additionally, as a result of our disposition of the first and second assignments of error, the state's third assignment of error is also not well-taken. As stated above, the police are unable to get consent to search after a traffic stop when "continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention." Robinette, at paragraph one of the syllabus. Likewise, there is no consent if "a reasonable person would [not] believe that he or she had the freedom to refuse to answer further questions and could in fact leave." Id., at paragraph three of the syllabus.
 {¶ 13} The trial court properly suppressed the evidence from the searches of Moore and his vehicle because the police went beyond the proper bounds of a lawful traffic stop. As appellant's three assignments of error are not well-taken, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
[1] The fact that Moore was outside his vehicle when this encounter took place is immaterial. See, State v. Roberts (1999), 293 Mont. 476,481-483. Contra, State v. Adams (Dec. 31, 2002), N.C. App. No. COA01-1419. But cf., State v. Emerick (July 31, 2001), Ashtabula App. No. 2000-A-0064.