OPINION
This is an appeal from the Trumbull County Court of Common Pleas. Appellant, Robert Jordan, a.k.a. Robert Fitzgerald Armstrong, appeals his conviction and sentence for five counts of kidnapping and one count of aggravated robbery.
On April 17, 1996, the Trumbull County Grand Jury indicted appellant on twenty counts: counts one to ten, kidnapping, aggravated felonies of the first degree, in violation of R.C.2905.01(A)(2); and counts eleven through twenty, aggravated robbery with gun specifications pursuant to R.C. 2941.141, aggravated felonies of the first degree, in violation of R.C.2911.01(A)(1). On April 26, 1996, appellant filed a motion to continue the pretrial scheduled for May 14, 1997. On May 9, 1996, appellant was also charged with another count, count twenty-one, receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.71. On May 20, 1996, appellant entered a plea of not guilty by reason of insanity to all charges. The trial court tolled the speedy trial time on May 21, 1996, in a judgment entry in which it acknowledged appellant's not guilty by reason of insanity plea. In a separate entry dated May 22, 1996, it ordered appellant to undergo a forensic examination for this purpose to be conducted by the Forensic Psychiatric Center of Northeast Ohio, Inc.
On August 13, 1996, appellant waived his right to a speedy trial. Thereafter, on August 29, 1996, appellant filed a motion to suppress any statements he made, in which he claimed that he was not given his Miranda warnings. After a hearing, the trial court suppressed the statements appellant made at the scene of the offense, but it did not suppress the statements appellant furnished at the Trumbull County Jail after he was Mirandized. Appellant submitted another motion to suppress any evidence that was seized at his residence on October 31, 1996. The trial court overruled appellant's motion to suppress after a hearing. On that same date, appellant filed a motion for change of venue. Several other pretrial motions were filed with the trial court, which were also apparently overruled.
A jury trial commenced on April 7, 1997. The following evidence was elicited largely from the case-in-chief of appellee, the state of Ohio. Robert Capito ("Capito") testified that on April 8, 1996 around 10:30 p.m., he went to the Ponderosa in Niles, Ohio, to pick up a friend. He stated that he helped his friend, who was working at the restaurant, so they could leave. Capito and Edward Joseph ("Joseph"), an employee of Ponderosa, took the garbage from inside Ponderosa out to a dumpster located behind the building. As Capito finished dumping the trash out, "[he] looked over [his] shoulder and saw two men with ski masks come up with machine guns." Capito indicated that after the gunmen placed a gun to his and Joseph's backs, they let the two men in through the rear door of the restaurant. Once the masked men were inside the restaurant, they forced several employees on the floor, except the manager, Marjorie McCleery ("McCleery"). He recalled that the two men ordered McCleery to open the safe in the office. He overheard one of the masked men tell McCleery to "[h]urry the fuck up, Bitch," and then saw one of the men strike her in the head with a gun. Joseph testified following Capito and corroborated Capito's version of the events that transpired on April 8, 1996.
At the conclusion of Joseph's testimony, McCleery was called to the stand. She stated that when Capito and Joseph returned from taking out the garbage, there were four men instead of two. She recalled that one of the masked men hit her in the arm with his gun. McCleery mentioned that both masked men were African American. The men told everyone to get on the floor and ordered McCleery to go to the office to "[o]pen the fucking safe." She explained that she was unable to open the vault because she was scared. One of the men "smacked [her] on top of the head with his gun," which caused her head to bleed. A few minutes later, one of the men unmasked himself, pushed McCleery in a chair, and pointed a gun at her for about five seconds. Thereafter, he left the office, which is when she realized that the restaurant was surrounded by police officers. She testified that all the people inside the restaurant were "scared to death." As a result of the incident, McCleery received stitches on her head.
Kenneth Santuzzi ("Santuzzi"), an off-duty employee of Ponderosa, testified he and Greg Capito ("Greg"), Robert Capito's brother, went to the restaurant for some ice. The doors were locked so they knocked on them. They looked through the windows and saw their friends and co-workers laying on the floor. At first they thought that everyone was on the ground laughing, until they saw one of the girls and realized she was frightened. Greg managed to move away from the doors, but Santuzzi was ordered, at gunpoint, to enter the restaurant and lay on the floor. Robert McNaughton ("McNaughton"), who was waiting for his daughter to finish her shift, indicated that he was approached by one of the men, told to get out of his car, and get inside the restaurant on the floor. After the two men were taken into Ponderosa, Greg ran across the street to a gas station and called 9-1-1.
Several other witnesses testified after Santuzzi. They all corroborated the events that occurred on April 8, 1996. Further, they stated that they all got on the ground because they feared for their lives. They also heard one of the gunmen strike McCleery with what they later found out to be his gun.
The gunmen were tipped off that the authorities were coming because they had a police scanner. They searched the restaurant for a place to hide, but did not know what to do. In the meantime, Officer Paul Monroe ("Monroe") from the Howland Township Police Department heard the dispatch and arrived at the scene. He observed an unmasked man with a weapon look towards him. Monroe recognized his face as "somebody that [he] might have encountered in the past." On cross-examination, appellant's attorney asked Monroe what time he received the dispatch. After he answered, defense counsel inquired as to how he remembered the exact time one year later. Monroe replied that he went "to the 9-1-1 center on Friday and spoke with an employee * * * who was able to bring up the tapes." He also admitted that he listened to the tapes to refresh his memory. At this point, appellant's attorney requested to hear the tapes. However, the prosecutor replied that Monroe had checked the radio log on his own. Nonetheless, the trial court overruled this request. Thereafter, appellant moved for a mistrial, which the trial court overruled.
Several local police departments responded to the dispatch. Officers entered the building and motioned all of the occupants to exit, as more police cruisers arrived at the scene. Monroe determined that the suspects had gone up to the attic of the restaurant.
A few hours later, one of the suspects, Gregory Allen ("Allen"), was removed from the building. According to Lieutenant James Rieser ("Lt. Rieser") from the Trumbull County Sheriff's Department, Allen identified appellant as the other man in the attic. Lt. Rieser negotiated with appellant and eventually he surrendered to the authorities. Lt. Rieser subsequently placed him under arrest and turned him over to the Niles Police Department. Appellant was transported to the Trumbull County Jail, advised of his Miranda rights, and interviewed. Lt. Rieser testified that appellant indicated that he understood his rights and that his statement was recorded. Lt. Rieser stated that when he questioned appellant, appellant told him that he went to Ponderosa with Allen and a third man with the intention of robbing the restaurant. He further mentioned that he had a gun. However, when appellant came down from the attic he was unarmed. Nonetheless, the following day an officer retrieved two weapons, a money bag, and a ski mask from the ceiling. A fingerprint expert was called to the stand and explained that she examined the gun and its clip. She discovered a latent fingerprint on the clip of the weapon, which she later identified as appellant's.
On April 18, 1997, the jury found appellant guilty on: count one, the kidnapping of McCleery; count four, the kidnapping of Capito; count five, the kidnapping of McNaughton; count eight, the kidnapping of Santuzzi; count ten, the kidnapping of Joseph; and count eleven, the aggravated robbery of McCleery. Appellant was also found guilty of having a firearm under his control when he committed the aggravated robbery as to McCleery. The jury found appellant not guilty of the remaining counts. Upon the motion of appellee, the trial court dismissed count twenty-one, receiving stolen property. Appellant's sentence was as follows: on count one, kidnapping, and count eleven, aggravated robbery, appellant received a prison term of ten to twenty-five years to run concurrently, with a three-year term for the firearm specification to be served prior and consecutive to the principal sentence; and on counts four, five, eight and ten, all kidnapping counts, appellant was to serve five to twenty-five years with counts four and ten to run concurrent with each other, but consecutive to counts one and eleven, and counts five and eight to run concurrent with each other and consecutive to counts one, eleven, four and ten.
Appellant timely filed a notice of appeal and raises the following as error:
 "[1.] The trial court erred in overruling appellant's motion to suppress the statement he made to the police.
 "[2.] The trial court erred, as a matter of law, by denying [appellant's] motion to dismiss based upon a clear speedy trial violation.
 "[3.] The trial court erred, to the prejudice of [appellant], by overruling [appellant's] objection to the prosecuting attorney's comments regarding grand jury proceedings in her opening statement.
 "[4.] The trial court erred in allowing [appellee] to introduce a photograph without first establishing the proper foundation.
 "[5.] The trial court abused its discretion by finding that [appellee] had complied with discovery pursuant to [Crim.R. 16] and thereby allowed [appellee] to present evidence which in effect [appellee] had denied to [appellant].
 "[6.] The trial court erred in refusing to grant appellant's motion for a mistrial when [appellee] failed to produce certain 911 tapes."
In his first assignment of error, appellant asserts that the trial court erred in overruling his motion to suppress the statement he made to officers because he was coerced. Specifically, he asserts that the officers ignored his request to remain silent during questioning, and thus, his confession violated his constitutional right.
It is well-established law that police officers must inform a suspect in custody that he or she has the right to remain silent, that his or her statements may be used against him in a court of law, that he or she has the right to an attorney, and that if he or she cannot afford an attorney, one will be appointed prior to questioning. Miranda v. Arizona (1966), 384 U.S. 436, 444. Then, the suspect may waive those rights and make incriminating statements against himself or herself without the presence of counsel. Id. This court has stated, "* * * the state bears the burden of proving that statements were procured in compliance withMiranda." State v. Powell (Dec. 31, 1998), Lake App. No 97-L-253, unreported, at 7.
In State v. Eley (1996), 77 Ohio St.3d 174, 178, the Supreme Court of Ohio reasoned that the state has the burden to prove by a preponderance of the evidence that a defendant "voluntarily, knowingly, and intelligently" waived his Miranda rights based on the "`totality of the circumstances'" surrounding the interrogation.
Moreover, the trial court assumes the role of the trier of fact when considering a motion to suppress and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Kobi (1997), 122 Ohio App.3d 160, 167. Further, such finding will not be disturbed on appeal absent an abuse of discretion. State v. Lumpkin (Dec. 18, 1998), Lake App. No. 97-L-228, unreported, at 11. To determine whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
In the case sub judice, appellant argues the statement Lt. Rieser made to appellant, that he should cooperate because it would be beneficial for him, was coercive, and therefore, unconstitutional. This assertion is not well-founded. The transcript reveals that Lt. Rieser advised appellant of hisMiranda rights and that appellant waived those rights. Appellant's confession was made after he signed the waiver. Before appellant made any statements, Lt. Rieser informed him that it would be unfair for him to take the blame all by himself. Appellant has failed to demonstrate how Lt. Rieser's actions were "coercive" and how Lt. Rieser offered improper inducements. He did not use force or threats and did not make any promises to obtain appellant's confession. Accordingly, when considering the totality of the circumstances, it is evident that any remarks Lt. Rieser made to appellant were not of such a nature to render appellant's confession involuntary. Since appellant was read his rights, signed a waiver, was aware of the seriousness of the offense and was offered no inducements or promises for his confession, we conclude that appellant's confession was given voluntarily and was not coerced. Appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant contends that the trial court erred in denying his motion to dismiss for lack of a speedy trial. Pursuant to R.C. 2945.71(C)(2), an individual against whom a felony charge is pending must be brought to trial within two hundred seventy days after his arrest. In computing this time, each day a defendant is held in jail, in lieu of bail, counts as three days. R.C. 2945.71(E).
In the instant matter, we disagree with both appellant's and appellee's speedy trial calculations. The statute was running during the sixteen days between appellant's arrest on April 9, 1996, and the date he filed the motion to continue the pretrial on April 26, 1996. Because he was incarcerated, in lieu of bail, during the sixteen days, forty-eight days were tallied against appellee under the triple count provision. Thereafter, on May 1, 1996, the trial court ruled on the motion for continuance, but the speedy trial time continued to be tolled "to May 21, 1996 * * * or another acceptable date." See R.C. 2945.72(H). See, also, Statev. Egart (June 26, 1998), Ashtabula App. No. 96-A-0073, unreported, at 6-7. Nonetheless, on May 20, 1996, appellant entered a plea of not guilty by reason of insanity, which had the effect of simultaneous tolling the speedy trial time. However, the record is devoid of any evidence regarding whether the trial court, following its order for appellant to undergo a forensic examination to determine the issue of insanity, addressed the insanity plea.
On August 13, 1996, appellant filed a motion to waive speedy trial.[1] In our view, this also simultaneously tolled the statute. Additionally, from August 29, 1996 to March 24, 1997, appellant filed three separate motions to suppress evidence, which were not ruled upon until March 28, 1997. Thus, regardless of any other pending motions, the speedy trial time was tolled through March 28, 1997. See, generally, State v. Walker (1974), 42 Ohio App.2d 41.
Appellant also filed a motion for examination to determine his competency to stand trial on November 12, 1996, and a competency hearing was scheduled for March 4, 1997, after appellant requested a continuance, which tolled the statute.[2] "Pursuant to R.C.2945.72(B), the time within which an accused must be brought to trial is tolled from the date the accused files a motion challenging his or her competency to stand trial[,]" until the trial court makes a finding of competency. State v. Palmer
(1998), 84 Ohio St.3d 103, paragraphs one and two of the syllabus.
Further, appellant filed a motion for change of venue on October 31, 1996, which was not ruled upon until the date of the trial, April 7, 1997, thereby tolling the speedy trial time until the date of the trial. R.C. 2945.72(F); State v. Taylor (Nov. 17, 1995), Montgomery App. No. 14456, unreported, at 13, 1995 WL 680052, quoting State v. Herring (1984), 21 Ohio App.3d 18, syllabus.
Having reviewed the record with specific focus on the various motions filed by appellant from April 26, 1996, until the date of trial, April 7, 1997, and applying the dictates of R.C. 2945.71
and R.C. 2945.72 along with the rationale expressed in controlling case authority, we conclude that the only temporal period chargeable to speedy trial constraints is from April 9, 1996 to April 26, 1996, for a total of sixteen calendar days during which appellant was incarcerated on the pending charges. Obviously, these particular days are subject to the triple count treatment under R.C. 2945.71(E). Thus, forty-eight days is less than the two hundred seventy required. Consequently, it is our determination that appellant was brought to trial well within the statutory speedy trial time. Appellant's second assignment of error is not well-founded.
In his third assignment of error, appellant claims that the trial court erred by overruling his objection to the prosecutor's comments in opening statements. He asserts that when the prosecutor told the jury that "[t]he charges that the defendant has before us today are involved in the indictment which was returned by the Trumbull County Grand Jury," the prosecutor violated appellant's constitutional right to a fair trial.
In order to make finding of prosecutorial misconduct, a reviewing court must decide whether the challenged statements were improper, and if so, whether the remarks affected a defendant's substantial rights. State v. Jenks (1991), 61 Ohio St.3d 259,281. Prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial. State v. Phillips (1995), 74 Ohio St.3d 72, 90. Also, there can be no prejudice where the remaining evidence of guilt is so overwhelming that the outcome of the case would have been the same regardless of evidence admitted erroneously. SeeState v. Williams (1988), 38 Ohio St.3d 346, 349.
In the instant matter, after reviewing the record, we conclude that the challenged statement was not improper. Furthermore, appellant has not demonstrated how the statement affected his right to a fair trial. Appellant argues that the prosecution's comment "could easily lead any reasonable jury to believe that [a]ppellant must be guilty." However, the trial judge instructed the jury that:
 "A criminal case begins with the filing of an indictment, the indictment informs the defendant that he has been charged with an offense. The fact that it was filed may not be considered for any other purpose."
The trial judge also stated that "[t]he evidence does not include the indictment or the opening or closing statements of counsel." A presumption exists that a jury follows the instruction given to it by the trial judge. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. Hence, in the instant matter, we cannot presume that the jurors disregarded the trial court's instructions. Furthermore, even if the jury ignored the trial judge, the remaining evidence of guilt was so overwhelming that the result of the case would have been the same despite the evidence admitted erroneously. Accordingly, appellant's third assignment of error lacks merit.
In his fourth assignment of error, appellant maintains that the trial court erred by failing to exclude the photographs of McCleery, which were taken by a Niles police officer, without first establishing a foundation since the officer did not properly authenticate the photographs.
During the course of the trial, the trial court overruled defense counsel's objections as to the exhibits in question. However, the transcript reveals that, at the close of the evidence, the photographs of McCleery were nonetheless excluded. The trial court reasoned that they were not admissible because they would be overly prejudicial. Moreover, the jury never saw the photographs, it only knew of them. Therefore, appellant's fourth assignment of error is not well-taken.
In his fifth assignment of error, appellant alleges that the trial court abused its discretion by allowing appellee to introduce evidence in violation of Crim.R. 16. Specifically, appellant argues that the trial court allowed appellee to introduce the photographs of McCleery, even though appellee failed to include them with its discovery six days before trial. This argument is rendered moot since, as previously mentioned, the trial court eventually excluded the photographs of McCleery.
In his sixth assignment of error, appellant declares that the trial court abused its discretion by overruling appellant's motion for a mistrial when appellee failed to forward 9-1-1 tapes to the defense team.
Initially, we note that the grant or denial of a motion for mistrial is within the sound discretion of the trial court. Statev. Garner (1995), 74 Ohio St.3d 49, 59. Absent a showing that the accused suffered material prejudice, a reviewing court will not disturb the exercise of that discretion. State v. Sage (1987),31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59.
In the case at hand, Monroe testified that he reviewed the radio log, prior to testifying, to recall the time he responded to the call concerning the Ponderosa incident. Appellant's attorney requested to hear the recording as Monroe used it to refresh his memory. The trial court overruled this request. Subsequently, defense counsel moved for a mistrial, which the trial court also overruled. We conclude, however, that appellant suffered no prejudice and received a fair trial as the radio log would not have changed the outcome of the case.
Appellant further argues that Crim.R. 16(B)(1)(c) requires appellee to produce the 9-1-1 tapes. Crim.R. 16(B)(1)(c) provides:
 "* * * Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant."
Appellant has failed to demonstrate that the 9-1-1 tape or radio log was material to the preparation of his defense. The prosecutor did not obtain the tape or log to use as evidence at trial. Hence, it is our determination that appellee did not commit a discovery violation. Further, any error that may have occurred was harmless. Appellant's sixth assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.
 __________________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.
[1] Although a motion to waive speedy trial was filed, no specific date was set.
[2] An amended motion for examination to determine competency was also filed on December 2, 1996.