JOURNAL ENTRY AND OPINION
Defendant-appellant Curtis Bridges appeals from a judgment of the Court of Common Pleas denying his motion to suppress. Defendant was found guilty of trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03 and possession of cocaine exceeding 1,000 grams, in violation of R.C. 2925.11. Defendant also appeals the sentencing by the trial court. For the following reasons, we reject his contentions and affirm the decision of the trial court.
The record presented to us on appeal reveals the following: On May 11, 2001, Patrolman Jack Butcher of the North Olmsted Police Department observed a Cadillac speeding on I-480 in Cuyahoga County, Ohio. Ptl. Butcher signaled the driver of the Cadillac to pull over, and the driver complied. Upon approaching the car, Ptl. Butcher saw defendant in the driver's seat and co-defendant, Malika Poole, in the passenger seat. Defendant was unable to produce a valid driver's license but did have an Ohio State identification card. Malika Poole was also unable to produce either a driver's license or State ID but did have a work identification card with her name and photograph.
Defendant told Ptl. Butcher that they were driving from Chicago, that the Cadillac was a rental, and that his cousin had rented it. Neither he nor Malika Poole were able to produce the rental papers.
Ptl. Butcher returned to his cruiser to check the vehicle's status and defendant's driver and warrant status. The check revealed that the license plate on the Cadillac was registered to a 2000 Chevy Malibu. The check also revealed that defendant had a warrant for his arrest, that his driving status in Ohio was suspended and that Malika Poole's temporary Ohio driver's permit had expired.
The dispatch center contacted Ptl. Chris Fox to respond to Ptl. Butcher's location so that they could arrest the defendant on the warrant.
Upon Ptl. Fox's arrival, Ptl. Butcher approached defendant in the Cadillac and advised him of what was happening. Ptl. Butcher removed defendant from the car, patted him down, and placed him in the back of the cruiser. Ptl. Butcher again asked defendant who rented the car. This time, defendant said his sister had rented the car.
Ptl. Butcher approached Malika Poole in the passenger side of the vehicle and again asked her for the rental papers. She was still unable to produce them. Ptl. Butcher then advised her that he was going to tow the vehicle. He removed her from the vehicle, checked her for weapons, and placed her in his cruiser.
Defendant asked Ptl. Butcher if Malika Poole could drive the car away. Ptl. Butcher said no because there was no valid rental agreement. Ptl. Butcher then informed defendant that he would be doing an inventory of the vehicle. The North Olmsted Police Department requires an inventory of all vehicles prior to being towed.
Ptl. Butcher and Ptl. Fox performed an inventory of the vehicle. During the inventory, they discovered a large quantity of cocaine.
On May 17, 2001, defendant was indicted for one count of possession of cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.11
and trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. Both of these counts are felonies of the first degree with mandatory terms of incarceration of ten years. Additionally, each count had a Major Drug Offender's specification which allows the sentencing judge to run an additional one to ten years consecutively on the underlying mandatory ten years. Malika Poole was also indicted for her conduct arising out of these events.
On May 31, 2001, June 13, 2001, and June 15, 2001, defendant filed motions to suppress in which he maintained that all evidence relating to his arrest for possession and trafficking cocaine should be excluded for the following reasons: lack of probable cause for the initial stop, and the search exceeded the scope of an inventory search.
An evidentiary hearing on defendant's motion to suppress was conducted on June 18, 2001. During the hearing, Penelope Wohlgemuth, a counter supervisor for Alamo Rental Car at Cleveland Hopkins Airport, testified that the vehicle driven by defendant had been rented by a female named Beatrice Hunter. Pursuant to company policy, no one other than Beatrice Hunter was authorized to drive the rented car. Ptl. Butcher also testified that he saw defendant's car traveling at a greater speed than the posted 60 mph. He testified that he activated his laser gun on the defendant's car and he received a reading of 76 mph. He took a second reading and it was 64 mph. He testified that the defendant slowed down once he saw the cruiser. Ptl. Butcher testified that he did not know the race of the defendants until their car passed him. Ptl. Butcher testified that neither defendant nor co-defendant had a driver's license on their person and that a check revealed that defendant had a suspended license and an outstanding warrant from South Euclid. He testified that he decided to tow the car because neither party could produce the rental papers for the car. Finally, he testified that he is required to perform an inventory prior to towing a car.
On June 21, 2001, the trial court denied defendant's motion to suppress. The trial court found that Ptl. Butcher had probable cause to stop and detain the defendant since he was speeding. The court also found that the inventory search was legal.
On June 21, 2001, defendant plead guilty to the indictment of trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03 and possession of cocaine exceeding 1,000 grams, in violation of R.C. 2925.11.
On July 31, 2001, defendant was sentenced to a mandatory term of ten years on each underlying count and to five years on the specification, to run consecutively. The total sentence was 25 years.
Defendant appeals his conviction and sentence and raises five assignments of error for our review. We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. The court erred when it denied the defendant's motion to suppress and for the return of illegally seized property.
In this first assignment of error, we must determine whether the North Olmsted Police had probable cause to stop and detain the defendant and perform an inventory search of the vehicle.
When considering a motion to suppress, the trial court assumes the role of trier-of-fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Kobi (1997),122 Ohio App.3d 160. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting the facts as found by the trial court as true, the appellate court must then independently determine, as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
A police officer may stop a vehicle based on probable cause that a traffic violation has occurred. Dayton v. Erickson (1996), 76 Ohio St.3d 3.
Here, Ptl. Butcher stopped defendant for a traffic violation, speeding. Defendant contests the legality of the initial stop and claims that the stop was based on racial profiling. Our review of the record mandates that we agree with the trial court's conclusion that there was not a scintilla of evidence that Ptl. Butcher was engaged in racial profiling. Ptl. Butcher testified that he did not know the race of the occupants of the Cadillac until after he used the laser gun and they passed him on the berm of I-480. He also testified that he stopped four other cars for speeding on the morning of May 11, 2001, and that the race of all four of those drivers was white. (Tr. 161-165). Thus, we conclude that the stop was lawful.
When Ptl. Butcher approached defendant, following the stop, and asked for his driver's license, defendant was unable to produce one. When Ptl. Butcher ran defendant's information into the database and found that there was a warrant for his arrest, Ptl. Butcher was entitled to arrest defendant, which he did.
After arresting defendant, Ptl. Butcher decided to call for a truck to tow the Cadillac because Malika Poole was unable to produce the rental papers for the car. Under these circumstances, we conclude that Ptl. Butcher's decision to have the Cadillac towed was reasonable.
Pursuant to North Olmsted Police policy, Ptl. Butcher conducted an inventory search of the car. Ptl. Butcher testified that the inventory search is done to protect the police department and the individual against allegations of theft. Ptl. Butcher also testified that he is required to search the entire vehicle, including locked areas.
Based on Ptl. Butcher's testimony, we conclude that the officer's inventory search of the trunk and the suitcases was in accordance with the policy of the North Olmsted Police Department concerning an inventory search of a car that is going to be towed. We further conclude that the inventory search of the Cadillac was reasonable, for the reasons indicated in Ptl. Butcher's testimony. Specifically, it is reasonable to do an inventory search before surrendering a car to a towing company, in order to make sure that the car's contents are properly accounted for.
We conclude that the stop, arrest and search were all reasonable and lawful. Accordingly, the trial court did not err in denying defendant's motion to suppress.
Defendant's first assignment of error is overruled.
 II. The court erred in sentencing the appellant to consecutive sentences and in sentencing him to the gross sentence of twenty-five years.
 III. The court erred when it imposed the maximum sentences possible for the charges made herein on the basis of R.C. of Ohio, § 2925.03(c)(4)(g), i.e., Count I (preparation of drugs for shipment, etc.) and § 2925.11(c)(4), i.e., Count II (possession of more than 1,000 grams of cocaine).
In these assignments of error, defendant challenges the trial court's imposition of a maximum, consecutive term of incarceration.
Defendant was convicted of possession of cocaine exceeding 1,000 grams, in violation of R.C. 2925.11 and trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. Both of these counts are felonies of the first degree with mandatory terms of incarceration of ten years imprisonment. Accordingly, the trial court did not err in imposing two ten-year sentences.
Next, we find that the trial court did not err when it imposed an additional five years under the major drug offender specification. Pursuant to R.C. 2925.11(C)(4)(f) and R.C. 2929.14(D)(3)(b), the trial court may impose an additional penalty of anywhere from one to ten additional years imprisonment upon the making of certain findings enumerated in the statute. Specifically, R.C. 2929.14 (D)(2)(b) provides in pertinent part:
 (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
Here, in support of its decision to impose an additional five years of incarceration, the trial court noted the following factors: (1) defendant's history with drug convictions; (2) the large amount of the cocaine confiscated with a street value of over one million dollars; and (3) the serious harm and corruption suffered by the community as a result of drug offenses.
The trial court then made the requisite findings. The trial judge stated that defendant is a likely recidivist. (Tr. 51). The trial judge stated that this was the worst form of the offense due to the amount of cocaine. (Tr. 51). The court also stated that a shorter term would demean the seriousness of the defendant's conduct and not adequately protect the public. Accordingly, the trial court did not err in imposing an additional five-year sentence.
Finally, we find that the trial court did not err in the imposition of consecutive sentences. Pursuant to R.C. 2929.14(E)(4), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of certain findings enumerated in the statute. Specifically, R.C. 2929.14(E)(4) provides in pertinent part:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Under R.C. 2929.19(B)(2)(c), if the trial court imposes consecutive sentences, it must make a finding on the record that gives its reason for imposing consecutive sentences. State v. Nichols (Mar. 2, 2000), Cuyahoga App. No. 75605, 75606; State v. Parker (Dec. 9, 1999), Cuyahoga App. Nos. 75117, 75118; State v. Cardona (Dec. 16, 1999), Cuyahoga App. No. 75556. The record must confirm that the trial court's decision-making process included all of the statutorily required sentencing considerations. See Cardona, supra; Nichols, supra, citing State v. Edmonson (1999),86 Ohio St.3d 324. The trial court need not use the exact words of the statute; however, it must be clear from the record that the trial court made the required findings. State v. Garrett (Sept. 2, 1999), Cuyahoga App. No. 74759.
Here, at the sentencing hearing, the trial court stated the following in pertinent part:
 Isn't it ironic that the Defendant here and his girlfriend, and mother of one of his children, went to such extents that you rent a car in some third-party's name, pay the people to rent the car, you are not even on the rental agreement yourself, and you have these drugs in the trunk of your car surrounded by babies' clothing, to add insult to injury.
 If it wasn't for the careless, stupid speeding by the Defendant Bridges, he probably would never have been apprehended, and would continue what I believe was an ongoing activity by him to bring illegal drugs into this Community, and the err of speeding, probably if you had a driver's license, which you didn't, you would have gone on and would not have been brought to the attention of law enforcement authorities.
* * *
 Certainly they were appropriate and proper in seizing the vehicle, and conducting their inventory search, incidental to the seizing.
 Now, the Court is certainly aware of the fact that ten kilos of Cocaine, and its street value of $1,250,000 to $1,500,000, is an enormous amount, and if not being apprehended by the North Olmsted Police Department, would have gone into our community, and I can only envision the continual harm that it would have wreaked upon the people that use it and buy the 10 and $20 of rock, and that this community already, through this Court alone, I know we have over 1,200 people actively in treatment at the cost of millions of dollars to the taxpayers.
 The illness that it causes to the people that it wreaks havoc upon Crack Cocaine, and the corruption it causes along the way.
 So the fact that this was brought to the attention of the Legal System, in this Court's opinion, is a very serious offense, and that's the way this Judge is going to treat this.
 The Court is taking into consideration the fact that the Defendant, in August of 2001, was convicted of — plea of guilty to manual delivery of Cocaine, in Lake County, Illinois and was sentenced to thirteen months probation — strike that.
 I think it was 1991, 36 months probation, and then in February of `96, was found guilty of a Felony and Possession of a Firearm, received a sentence of six months, suspended sentence, apparently, that you were convicted of no driver's license in Cleveland Heights in `98 — that's not in my consideration here — was convicted of Battery, also in Waukegan, Illinois on July 28th for which there's a Warrant out for his arrest.
 The record of the Defendant, in this Court's opinion, does make him a likely recidivist. He has served some time in the Penal Institution before. He had an arrest warrant for him at the time of the incident in this particular case. Past rehabilitation has failed.
 This court finds, among other things, that a prison term is consistent with protecting the public from future crime in punishing this Defendant, that the shortest term demeans the seriousness of the offender's conduct, and the shortest term would not adequately protect he [sic] public from the Defendant and others.
 The Court finds that in this Court's opinion, that the amount of this Crack Cocaine does rise to the level of the worst form of this offense.
 The argument of Mr. Willis that there could be twice this amount or more, does not, in this Court's opinion, remove this from being the worst form of this type of offense.
* * *
 I believe this Defendant was in the business of trafficking these drugs by way of the number of trips back and forth, using a bogus car and so forth, and that the Defendant does pose the greatest likelihood of committing future crimes, and would still be committing them if not apprehended, as I already stated. The Court believes that consecutive terms are necessary to protect the public.
 The Court believes that consecutive terms are necessary to punish the Defendant, and the terms that I will render here are not disproportionate to the seriousness of the Defendant's conduct, and the danger the Defendant poses to the public, and further that the harm caused is so great that no single prison term would adequately reflect the seriousness of the Defendant's conduct.
 The Defendant's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crimes by this Defendant.
 All of those things having been taken under full consideration, as well as incorporating herein, of course, the evidence that the Court has heard, on the Motion to Suppress and the trial of the co-Defendant, as well as the Exhibits submitted by the Prosecutor for purposes of sentencing, they're incorporated therein, it's the Court's opinion, further for the record, that the Defendant really is void of any sense of responsibility to the eight women he got pregnant, to the ten different children he has here and in Chicago, that he has no sense of moral values as well as transporting these illegal drugs into the community of Cuyahoga County.
We find that the trial court complied with the dictates of R.C.2929.14(E)(4) when imposing consecutive sentences. The trial court stated that it imposed these sentences because of the large amount of cocaine defendant was carrying; the harm the public suffers when such a large amount of cocaine is brought and sold into the community; the harm to taxpayers who pay millions of dollars for the treatment of addicts; the defendant had a history of criminal convictions and he has not responded favorably to sanctions previously imposed. The trial court also specifically found that this rose to the level of the worst form of the offense and that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and the danger he poses to the community.
The record before us supports the trial court's decision to impose consecutive sentences in this case, and the sentences are not contrary to law. Defendant's second and third assignments of error are overruled.
 IV. To the extent the court relied on facts that were not a part of the trial record made in this case, as distinguished from that made in the trial of the co-defendant, the appellant was denied due process.
In defendant's fourth assignment of error, defendant argues that the assessment of the sentencing factors was unfairly influenced by non-statutory and prejudicial factors. Specifically, defendant argues that the trial court was unfairly influenced by its conclusion that the defendant was involved in an ongoing activity of bringing illegal drugs into the community and by the fact that the defendant had ten children by eight different mothers and that four of the children were present in the courtroom at sentencing. We disagree.
The trial court's comments, when viewed in the context of the entire proceeding, demonstrate a legitimate basis for its decision to impose consecutive sentences. Defendant was caught with a large amount of cocaine, with a market value of over one million dollars. Defendant had an extensive criminal record preceding his convictions in this case. Although the trial court may have made some additional comments regarding the defendant's personal life history that need not have been included, considering the record in its entirety, we cannot find that the trial court's findings either tainted the fairness of the entire proceeding or demonstrated the trial court's prejudice against the defendant. See State v. Williams(Jan. 29, 2002), Cuyahoga App. Nos. 79590, 79591; State v. Payton (Dec. 13, 2001), Cuyahoga App. No. 79302.
Defendant's fourth assignment of error is overruled.
 V. The court erred in sentencing the defendant consecutively on Counts I and II, the drug possession charge and the preparation for shipment charge involving the same drugs.
In his fifth assignment of error, defendant argues that the trial court improperly failed to merge his convictions for possession of cocaine and trafficking in cocaine. We disagree. R.C. 2941.25, Ohio's allied offenses statute, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions. State v. Moore (1996), 110 Ohio App.3d 649, 653. Specifically, R.C. 2941.25 states:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In determining whether crimes are allied offenses of similar import under R.C. 2941.25(A), courts must assess whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. State v. Rance (1999),85 Ohio St.3d 632, 638. If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639. The burden of establishing that two offenses are allied falls upon the defendant. State v. Douse (2001), Cuyahoga App. No. 79318.
Here, defendant was convicted of possession of cocaine exceeding 1,000 grams, in violation of R.C. 2925.11 and trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. R.C. 2925.11
provides that no person shall knowingly obtain, possess or use a controlled substance. R.C. 2925.03(A)(2) provides that no person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another.
This Court has consistently held that drug trafficking and drug possession are not allied offenses of similar import since R.C.2925.03(A)(2) imposes the additional element that possession of the controlled substance is incident to preparation for shipment, transportation, delivery or distribution of the drug through a sale. See State v. Powell (1993), 87 Ohio App.3d 157, 169; State v. Jordan (1992),73 Ohio App.3d 524, 542; State v. Cordero (July 23, 1992), Cuyahoga App. No. 61030; State v. Pall (Sept. 12, 1991), Cuyahoga App. No. 59232; State v. Mateo (Aug. 17, 1989), Cuyahoga App. No. 55833.
Defendant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCURS.