DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas following a jury verdict which found appellant guilty of possession of heroin. Because we conclude that the verdict was supported by sufficient evidence and was not against the manifest weight, but that appellant's sentence was imposed pursuant to unconstitutional statutes, we affirm in part and reverse in part.
 {¶ 2} Appellant, Michael A. Cortez was indicted on one count of possession of heroin, a violation of R.C. 2925.11(A) and (C)(6)(d). Appellant filed a motion to suppress which was denied. At trial, the following evidence was presented to the jury.
 {¶ 3} Toledo Police Detective Jerome Elmore testified that in December 2003, he began investigating suspected drug activities at two properties occupied by appellant. Appellant lived in a home at 969 Berry Street, Toledo, Lucas County, Ohio. Appellant also was renting to own 811 Earl Street which was adjacent to the residence property. The Earl Street property was a two story building consisting of a first-floor garage and a second story loft apartment. Elmore stated that his investigation included surveillance of the garage property approximately five to six hours per day, 15 to 16 days per month in December and January, including some weekends. He said that on off-shift times he would drive by or watch the property for 30 minutes in the mornings when he had court appearances.
 {¶ 4} Elmore stated that during February, on the three days preceding the search, he watched again for about six hours per shift because the team was preparing to execute on the warrant. There were two entrances to the apartment: one from within the garage and the other at the front of the building. Elmore stated that, other than "drug transactions," appellant was the only person he every saw entering or leaving the Earl Street property. He also stated that shortly after appellant entered the garage area, he would observe the lights turn on in the upstairs apartment.
 {¶ 5} Elmore stated that on February 4, 2004, he saw appellant enter the building. Elmore then left for approximately 45 minutes to obtain a search warrant and join with the search team. When the 12 members of the search team, including vice detectives, returned and executed the warrant, the entrance to the loft area located within the garage was barricaded from the inside. The garage contained two vehicles. The second story apartment area contained "play room" items, including a pool table, ping pong tables, electronic surveillance devices, and two-way radios. The lights were still on, but no one was present in the building and no dishes, clothing, or personal items were found to indicate that anyone was actually living in the apartment.
 {¶ 6} In the kitchen area, the police also found a coffee grinder, a plastic bag with brown chunks of what later tested to be 14.11 grams of heroin, a sandwich bag box, lactose, a scale, ten pipes, $1,000 in cash, and a January 2003 computer store receipt with appellant's name on it. The grinder, lactose, scale, and plastic bags were noted to be commonly present for the processing and sale of heroin. Although the grinder had no trace of heroin residue or coffee grinds, appellant's fingerprint was found on it. Another partial print, which was not appellant's, was found on the sandwich bag box. No other fingerprints were found on any of the other items.
 {¶ 7} Elmore acknowledged that he had assumed appellant had entered the loft apartment when the light came on after appellant entered. The detective further acknowledged that he could not say absolutely that appellant stayed in the garage or had entered the apartment. Elmore conceded that he did not know how or when appellant's print came to be on the grinder and that the mere presence of the fingerprint did not establish that appellant occupied the apartment area.
 {¶ 8} Elmore then testified that a second search warrant was executed for appellant's residence at 969 Berry Street. As a result of that search, police found drug paraphernalia, including more glass pipes. Warrants were issued for appellant and he was later arrested based upon items found at both addresses.
 {¶ 9} Detective Greg Mattimoe testified that he participated with Detective Elmore in the execution of the search warrant on 811 Earl Street. He corroborated that the door to the apartment within the garage area was barricaded and unoccupied. Mattimoe stated that he found a plastic baggie of what appeared to be heroin smashed flat under a heavy box in a kitchen cupboard. He gave the baggie to Detective Elmore. Another detective testified that the substance in the baggie tested to be heroin.
 {¶ 10} Detective Jerry Shriefer then testified that he dusted for and found the fingerprints on the coffee grinder and sandwich bag box. Shriefer opined that the fingerprint on the coffee grinder matched appellant's, which was confirmed by a second detective. He also stated that no fingerprints were recovered from the heroin baggie or the scale, and the partial print on the sandwich bag box remained unidentified.
 {¶ 11} The jury found appellant guilty of possession and he was sentenced to a term of three years mandatory incarceration. Appellant now appeals from that judgment, arguing the following three assignments of error:
 {¶ 12} "Assignment of Error No. 1
 {¶ 13} "The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that the defendant-appellant, Mr. Cortez, was guilty of possession of heroin in violation of R.C.2925.11(A) and (C)(6)(d).
 {¶ 14} "Assignment of Error No. 2
 {¶ 15} "The jury verdict was against the manifest weight of the evidence.
 {¶ 16} "Assignment of Error No. 3
 {¶ 17} "In sentencing the appellant to more than the statutory minimum, the trial court relied on facts not within the jury verdict or admitted by the defendant, contrary to the United States Supreme Court's rulings in USA v. Booker [sic] and Blakely v. Washington."
 I. {¶ 18} In his first assignment of error, appellant argues that the evidence was insufficient to support the conviction.
 {¶ 19} Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine:
 {¶ 20} "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. If a defendant's conviction is reversed based upon the sufficiency of the evidence, the defendant goes free. See Id.
 {¶ 22} R.C. 2925.11(A) states: "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Knowingly" is defined by R.C.2901.22(B) as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} To "possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 24} Possession of a controlled substance "may be actual or constructive. * * * A person has actual possession of an item when it is within his immediate physical control." State v. Burnett, 10th Dist. No. 02AP-863, 2003-Ohio-1787, ¶ 19; State v. Kobi (1997),122 Ohio App.3d 160, 174. Constructive possession occurs when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession or when one has knowledge of the presence of the drugs. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus.
 {¶ 25} Thus, the mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession.State v. Chandler (Aug. 9, 1994), 10th Dist. No. 94AP-172. Actual ownership of the drugs, however, need not be proven to establish constructive possession. State v. Mann (1993), 93 Ohio App.3d 301, 308. Constructive possession may be proved by circumstantial evidence alone.State v. Taylor (1997), 78 Ohio St.3d 15; Jenks, supra, at 272-73. The discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs. Burnett, supra, at ¶ 20; State v. Pruitt
(1984), 18 Ohio App.3d 50, 58.
 {¶ 26} In this case, evidence was presented that appellant often entered the building where the apartment was located and the heroin was found. Over a period of two months, during the many hours of police surveillance, appellant was the only person seen entering, staying, and exiting the building. The lights in the apartment would turn on shortly after he entered the garage area. His fingerprint was found on the coffee grinder which was near the other items used in the processing and sale of heroin, along with $1,000 in cash and other drug paraphernalia.
 {¶ 27} Finally, although appellant claimed that the heroin belonged to a tenant, no evidence was found that anyone else was actually living in the apartment. Nothing indicated that anyone else had control over the premises other than appellant. Therefore, the evidence presented at appellant's trial, when viewed in the light most favorable to the prosecution, is sufficient to establish that appellant had control over the premises and knowingly had constructive possession of the heroin found in the garage loft apartment.
 {¶ 28} Accordingly, appellant's first assignment of error is not well-taken
 II. {¶ 29} In his second assignment of error, appellant contends that the jury verdict was against the manifest weight of the evidence.
 {¶ 30} Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The appellate court, "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Additionally, the reversal must be by concurrence of all three judges and the defendant is then granted a new trial. Thompkins, supra, at 389.
 {¶ 31} The only issue in contention in the present case is whether the state linked appellant to the premises to establish control over and constructive possession of the heroin. Based on our discussion and review of sufficiency, we conclude that it did. We cannot say that the jury lost its way or that the verdict is against the manifest weight of the evidence.
 {¶ 32} Accordingly, appellant's second assignment of error is not well-taken.
 III. {¶ 33} In his third assignment of error, appellant argues that the trial court erred when it sentenced him to a non-minimum sentence based upon facts not alleged in the indictment or admitted by appellant. In sentencing appellant, the trial court stated that it found, "pursuant to R.C. 2929.14(B) that the shortest prison term possible would demean the seriousness of the offender's conduct and would not adequately protect the public and therefore — and therefore find it's necessary to impose a greater term."
 {¶ 34} We conclude that the sentencing in this case is controlled by the Supreme Court of Ohio's decision in State v. Foster, 109 Ohio St.3d. 1, 2006-Ohio-856, which held that R.C. 2929.14(B) and R.C. 2929.14(E)(4) violate the Sixth Amendment to the United States Constitution, pursuant to Blakely v. Washington (2004), 542 U.S. 296, and Apprendi v. NewJersey (2000), 530 U.S. 466. Having relied on unconstitutional statutes when sentencing appellant, the trial court erred and the sentence must be vacated. Foster, supra, at ¶ 103 and ¶ 104.
 {¶ 35} Accordingly, appellant's third assignment of error is found well-taken.
 {¶ 36} The judgment of the Lucas County Court of Common Pleas is affirmed in part, and reversed in part. The case is remanded for resentencing consistent with this decision. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., George M. Glasser, J. CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.