DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Ronald Nesby, Jr. ("Nesby"), appeals from the decision of the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On August 15, 2006, numerous police agencies were involved in a gun violence reduction sweep. To this end, undercover police officers were patrolling known high crime areas for illegal drug activity. Nesby was observed by an undercover officer standing on a street corner in a high drug area. The officer watched as Nesby leaned into a car making what appeared to the officer to be a drug sale. The undercover officer notified a uniformed police officer that he *Page 2 
saw three African American males on the street corner and that one of the males was wearing dark clothing and was observed leaning into a car. The uniformed officers responded and found Nesby, drinking a can of beer. As the officers approached, Nesby threw the beer and made a throwing motion with his other hand down to his feet. At his feet, the officers discovered a bag of crack cocaine, weighing 7.8 grams. The officers arrested Nesby and discovered $1,025.00 on his person.
 {¶ 3} On August 24, 2006, Nesby was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A). Nesby pled not guilty to the charge and on December 4, 2006, the case proceeded to a jury trial. The jury found Nesby guilty of the charge. After the verdict was read, Nesby fled from the courtroom. He was subsequently arrested and on March 9, 2007, he was sentenced to three years incarceration. Nesby timely appeals from his conviction raising two assignments of error for our review. We have combined his assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR I "[NESBY'S] GUILTY VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 ASSIGNMENT OF ERROR II *Page 3 "[NESBY'S] GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 {¶ 4} In his first and second assignments of error, Nesby contends that his conviction was against the manifest weight of the evidence and was based upon insufficient evidence. We do not agree.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} Therefore, we will address Nesby's claims that his convictions were against the manifest weight of the evidence first, as they are dispositive of his claims of insufficiency.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed *Page 4 
and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} In the instant case, Nesby was charged with possession of cocaine, in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) defines "knowingly" as follows:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 10} Possession is defined as
 "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 11} R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 12} "Possession may be actual or constructive." State v. Kobi
(1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as *Page 5 
"knowingly [exercising] dominion and control over [the drugs], even though [they] may not be within his immediate physical possession."State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. See also,State v. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession. State v.Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the elements of constructive possession. SeeState v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 13} The State presented evidence from Detective Tim Harvey ("Harvey"). Harvey testified that he works for the Akron Police Department Street Narcotics Uniformed Detail ("SNUD"). As part of his duties, Harvey does surveillance of known drug houses and drives through areas of Akron that are open-air drug markets. He explained that on August 15, 2006, he was participating in a gun violence reduction sweep. Harvey stated that he was doing surveillance in an area in which the Akron Police Department had made numerous past arrests and received complaints from neighbors about drug activity. He testified that while in this neighborhood he observed three African American males at the corner of Crosier St. and Ashland St. Harvey further testified that he observed one of the males, dressed in all dark clothing, near the driver's side of a vehicle that was running but was pulled over. Harvey testified that "[w]hat I observed at that point appeared to be drug activity." He stated that he notified the uniformed officers what he had observed and then left the area. Harvey explained *Page 6 
that the uniformed officers moved into the area and subsequently arrested Nesby. The uniformed officers took photographs of Nesby and the two men with him. Harvey identified the three men as the men he observed on the corner and noted that one of the men was wearing dark clothing. He stated that the man in the photo was Nesby. He then identified Nesby in court. On cross-examination, Harvey explained that after the uniformed officers arrested Nesby, he drove back through and informed them that the man they had arrested was the same man that he had observed. He explained that he did not see the drug transaction, but that he "saw what appeared to be behavior that was consistent with drug trafficking."
 {¶ 14} The jury also heard testimony from Akron Police Department Detective Chris Carney ("Carney"). He testified that he is the K9 handler with the SNUD. Carney explained that during the gun violence reduction sweeps, the Akron Police Department, along with several other state and federal agencies, attempt to cover the entire city of Akron, but concentrate on "high-violence, high-drug areas in the city." He stated that these areas are identified by the number of arrests that are made and the number of calls to the police department for drug dealing. He explained that the intersection of Crosier St. and Ashland was identified as a target area because the police department had made "numerous drug arrests" on Crosier St. and because "[t]here [have] been multiple shootings." He explained that the undercover officers are looking for "activity" in the area. "What I mean by `activity' are people out on the street corners. When they drive *Page 7 
down the street, are people flagging them down. Pretty basic common-sense police work." Carney testified that he was in uniform and in a marked Akron Police Department cruiser on August 15, 2006. He stated that he was the first patrol car to pull up to the three men that Harvey had observed. Carney testified that
 "[b]efore I even exited my cruiser, I observed [Nesby], he was standing on the sidewalk, there was a couple of other individuals around him, and he was drinking a Corona. * * * And when he turned around and he saw the cruisers, he threw the — threw the beer. * * * And then I approached. I got out of the car and I approached the individuals."
Carney further testified that as he approached the men he never took his eyes off Nesby and he observed him make a throwing motion with his left hand. "Out of his pocket, it went down to the ground, and then he tried to make distance from the object that he had thrown to the ground." He stated that "the object that he threw was by his foot. * * * He made the left motion with his hand. He stepped away. I grabbed a hold of him, I looked down, and it was crack cocaine." Carney testified that as he searched Nesby he found $1,025 on his person.
 {¶ 15} Sergeant Jason Malick ("Malick") of the Akron Police Department also testified on behalf of the State. He testified that he was involved in the gun violence reduction sweep on August 15, 2006. He testified that the Crosier St. vicinity is "one of the busiest drug areas in the city[.]" He testified that after the uniformed police had stopped Nesby, Harvey drove back by the scene and "indicated that one of the individuals we had stopped was the individual leaning in *Page 8 
the van." He further testified that as he got out of his car at the scene, he heard Carney state that Nesby was "'throwing something.'" As he looked, Harvey testified, he saw Nesby bring "his left arm back to his body." He then identified Nesby in court.
 {¶ 16} After the State rested its case, Nesby testified on his own behalf. Nesby testified that on August 15, 2006, he was celebrating a friend's birthday with two other individuals. He admitted that he had been drinking that day. He denied that he was drinking a bottle of beer on the street corner and denied throwing a bottle of beer on the sidewalk when the police arrived. He testified that there was "quite a distance" between him and where the drugs were found. He further stated that there were several people closer to the drugs than he was. Nesby explained that the money he had on him at the time of his arrest was for a birthday present for his daughter. Nesby also admitted that there was a warrant out for his arrest due to a domestic dispute with the mother of his child. He further testified that he had previously been arrested in 1987 for theft and in 1994 for robbery. Further, he testified that he was arrested in 1998 and again in 2005 for possession of cocaine. He stated that he was currently on probation for the 2005 charge, but that he had pled guilty to that charge. He explained that he had pled guilty because he was involved in it and wanted to take responsibility for it. Nesby admitted that in the instant case, he had leaned into the driver's side of a vehicle to talk to someone. He denied that he was wearing all black. *Page 9 
 {¶ 17} We are not persuaded by Nesby's argument that the State only made a circumstantial case and therefore the evidence failed to show that he possessed cocaine. The fact that the officers did not see what Nesby threw to the ground and that there were other people in the vicinity does not mean that Nesby did not possess the cocaine. As previously discussed, "a person may knowingly possess a substance or object through either actual or constructive possession." State v.Hilton, 9th Dist. No. 21624, 2004-Ohio-1418, at ¶ 16. Further, circumstantial evidence is sufficient to establish possession. SeeJenks, supra. It is clear from the testimony that both Malick and Carney observed Nesby in the process of throwing something to the ground. The testimony revealed that the cocaine was located at Nesby's feet and that he attempted to distance himself from it. Based on his criminal history and because his version of events was entirely different from all three of the State's witnesses, we agree with the jury's decision to disbelieve Nesby's testimony. After a review of the record, we cannot conclude that the jury created a manifest miscarriage of justice in finding Nesby guilty of possession of cocaine. As we have disposed of Nesby's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency on this claim. Roberts, supra, at *5. Accordingly, Nesby's first and second assignments of error are overruled.
 III. *Page 11 {¶ 18} Nesby's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, P. J. DICKINSON, J. *Page 11 
 CONCUR *Page 1