DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Marcus J. Newton, has appealed from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On September 28, 2006, Officer James Welsh responded to a possible domestic violence call in Elyria, Ohio. Officer Welsh observed a male and female, later identified as Newton and Jacqueline Martin, together in a dark alley when he drove to the street corner where the alleged domestic violence was occurring. He observed that Newton resembled an armed robbery suspect who recently had eluded police and also that Newton had Martin pinned against the alley's wall. Officer Welsh opined that Newton and Martin appeared to be having an argument and that Newton had his finger pointed at Martin.
 {¶ 3} Officer Welsh exited his cruiser and attempted to speak with Newton, but a foot pursuit ensued. Officer Welsh radioed for back up and chased Newton to a nearby grassy area. *Page 2 
By the time backup officers arrived, Officer Welsh had Newton pinned on the ground, his left hand in handcuffs and his right hand still free. The officers finished handcuffing Newton and called Life Care EMT to assess him. Because Newton had sustained several injuries, he was transported to the hospital instead of the police station. When EMT paramedics lifted Newton off the ground, police discovered his wallet and a crack pipe lying on the ground beneath him. Officers collected the crack pipe as evidence and also photographed Officer Welsh to document the injuries he sustained while arresting Newton.
 {¶ 4} On November 15, 2006, the grand jury indicted Newton on the following charges: (1) assault on a peace officer pursuant to R.C.2903.13(A); (2) resisting arrest pursuant to R.C. 2921.33(B); (3) obstructing official business pursuant to R.C. 2921.31(A); (4) possession of cocaine pursuant to R.C. 2925.11(A); and (5) possession of drug abuse paraphernalia pursuant to R.C. 2925.14(C)(1). The State later dismissed the paraphernalia charge, and the remaining counts proceeded to a jury trial on December 11, 2006. The jury found Newton guilty on all counts, and the trial court sentenced him to a total of twenty-two months in prison.
 {¶ 5} On December 17, 2007, Newton filed his notice of appeal after a previous dismissal for lack of a final, appealable order. Newton's appeal is now before this Court, raising two assignments of error for our review.
 II Assignment of Error Number One "APPELLANT WAS DENIED DUE PROCESS AND THE LIBERTIES SECURED BY OHIO CONST. ART. I, §§ 1, 2, 10, AND 16 BECAUSE HIS CONVICTION FOR ASSAULT ON A POLICE OFFICER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first assignment of error, Newton argues that his conviction for assaulting a peace officer was against the weight of the evidence. Specifically, he argues that the jury lost its *Page 3 
way because Officer Welsh's injuries were the result of Newton's struggling to get away, not an assault on his person. We disagree.
 {¶ 7} When considering a manifest weight argument, the Court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 ¶ 8} R.C. 2903.13(A) provides, in relevant part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" In defining the term "knowingly," the Revised Code provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). While assault is generally a first degree misdemeanor, the offense level elevates to a felony of the fourth degree if the victim of the assault is a peace officer. R.C. 2903.13(C)(4). A city police officer qualifies as a "peace officer" under the statutory definition. See R.C.2935.01(B). *Page 4 
 {¶ 9} Officer Welsh testified that Newton had Jacqueline Martin pinned against a wall and appeared to be arguing with her when he arrived on the scene. When Officer Welsh shined the spotlight from his police cruiser onto Newton and Martin, Newton released Martin and began walking away. Officer Welsh called for Newton to stop, but Newton increased his pace instead. Officer Welsh testified that he was able to step out of his cruiser in front of Newton only to have Newton look at him, proclaim "oh, sh*t[,]" turn back around, and run in the opposite direction. Officer Welsh pursued Newton and advised dispatch that he was on foot in pursuit of a suspect. While running after Newton, Officer Welsh continually commanded Newton to stop running. Newton refused to obey these commands, however, and ran to a nearby grassy area.
 {¶ 10} Officer Welsh stated that Newton then attempted to scale a chain link fence at the back of the grassy area, but fell backwards from the top of the fence when he tried to climb over it. This slip allowed Officer Welsh to catch up with Newton and tackle him in the grass. Officer Welsh testified that Newton struggled and would not place his hands behind his back for Officer Welsh to handcuff him. Newton managed to throw Officer Welsh off his back and stand up. He then punched Officer Welsh in the head with a closed fist and attempted to choke him. Officer Welsh testified that he was able to break Newton's hold and take him to the ground again. He then used pepper spray on Newton. During the entire exchange, Newton flailed and tried to elbow Officer Welsh. Officer Welsh admitted that he had to use force on Newton to try to subdue him. He stated that he hit several of Newton's large muscle groups when trying to handcuff him and that he might have inadvertently struck Newton's head with his flashlight when he used it to strike Newton's back. Officer Welsh was still struggling with Newton on the ground when other officers arrived. *Page 5 
 {¶ 11} Sergeant William R. Pelke testified that he received Officer Welsh's radio call at the station and drove to the area Officer Welsh initially radioed from when he reported that he was pursuing a suspect on foot. Since Sergeant Pelke did not know the direction of the chase, he turned off the sirens in his police car and began to drive slowly through the area while listening for any noise. Sergeant Pelke testified that he was able to hear Officer Welsh yelling "over here" from nearby. He further testified that he then saw that Officer Welsh had Newton pinned beneath his knee, but not yet fully handcuffed. Sergeant Pelke observed that Officer Welsh was breathing incredibly hard and Newton was still struggling. Together, the two officers were able to get Newton's right arm into the handcuffs. Sergeant Pelke testified that the officers later learned that Newton tested positive for being under the influence of cocaine.
 {¶ 12} Officer Daniel Sumpter testified that he also received Officer Welsh's distress call indicating that a foot pursuit had ensued. Officer Sumpter arrived after Officer Welsh and Sergeant Pelke had gotten Newton in handcuffs, but before the EMT paramedics arrived. Officer Sumpter observed that Officer Welsh appeared exhausted and severely out of breath. Once back at the station, Officer Sumpter took pictures of Officer Welsh, which depicted numerous red marks on his neck and right ear.
 {¶ 13} Both EMT paramedics who responded to the scene also testified. Bradley Rider testified that Newton failed to verbalize anything regarding his struggle with Officer Welsh. He specified that one of the officers told him Newton had been injured when he fell down, but he could not recall which officer made that statement. Craig Walker similarly testified that one of the officers told him that Newton injured himself falling down. Walker also stated that Newton was alert and initially answered all of the questions that Walker asked him, but fell silent when Walker tried to ask him about any drug use. *Page 6 
 {¶ 14} Jacqueline Martin testified that she had been walking down the street on her way to the store when she saw Newton walking towards her. She testified that Newton already had a forty-ounce beer with him, so she asked if she could share the beer. The two stood in an alley off the street so as not to draw attention to the open container. Martin testified that she saw a police car pass by, but continued to talk with Newton. She claimed that Officer Welsh walked up, shined his flashlight on them while keeping his other hand on his gun, and yelled at Newton to "stop" and "halt." Martin stated that Newton began running at this point and Officer Welsh pursued him. She watched the two run until they were out of her sight and then walked to the store to purchase her drink. Martin admitted that she had problems with drug and alcohol addiction and that she had multiple convictions for possession and for assault on a police officer.
 {¶ 15} Newton testified that he stopped Martin while walking on the street and shared a beer with her in the nearby alley. Newton further testified that he never touched Martin and that the two were having an amicable conversation before Officer Welsh's arrival. Newton spotted Officer Welsh when he was still in his cruiser and claimed to recognize him. Newton stated that he had never formally dealt with Officer Welsh, but knew that he had a reputation in the community for harassing people. Therefore, Newton began to back away and fled as soon as he realized that Officer Welsh meant to stop him. Newton averred that he ran to avoid "the beat down" and kept running when Officer Walsh screamed that he would shoot if Newton failed to stop. Newton testified that he slipped and fell on his stomach when he reached a nearby grassy field and this allowed Officer Walsh to catch up to him. He testified that Officer Welsh immediately tackled and beat him when he caught him and that he felt a hard hit to the back of his head. Newton claimed that he could not give the officers both of his hands because Officer Welsh had his right arm pinned beneath him the entire time. He further claimed that he never hit *Page 7 
Officer Welsh. Much like Martin, Newton admitted that he suffered from drug and alcohol additions and had several convictions for possession of cocaine.
 {¶ 16} Finally, Elyria Police Department Lieutenant Phillip Hammonds testified as a rebuttal witness concerning Officer Welsh's reputation. Lieutenant Hammonds indicated that Welsh had no disciplinary record in his almost nine years with the department. He also indicated that Welsh works with confidential informants as part of his duties and that none of the confidential informants had ever come forward with any negative information about Welsh.
 {¶ 17} The record supports the jury's conclusion that Newton assaulted Officer Welsh. Newton argues that Officer Welsh's version of the events was not as persuasive as his own, but the record supports Officer Welsh's testimony. Officer Welsh testified that he chased after Newton, fought with him when attempting to handcuff him, and suffered several injuries when Newton punched and choked him. Sergeant Pelke testified that he received Officer Welsh's distress call and found him struggling with Newton upon his arrival. He further testified that Newton, who tested positive for being under the influence of cocaine, refused to allow the officers to place him in handcuffs. Lieutenant Hammonds testified as to Officer Welsh's respectable reputation, and the photographs of Officer Welsh evidenced that he sustained injuries as a result of his struggle with Newton. We cannot say that the jury lost its way in finding this evidence and these officers more credible than the testimony of Martin and Newton, both of whom had addictions and multiple prior convictions. Newton's conviction for assault on a peace officer was not against the manifest weight of the evidence. Consequently, Newton's first assignment of error lacks merit.
 Assignment of Error Number Two "APPELLANT WAS DENIED DUE PROCESS AND THE LIBERTIES SECURED BY OHIO CONST. ART. §§ 1, 2, 10, AND 16 BECAUSE HIS *Page 8 
CONVICTION FOR POSSESSION OF COCAINE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} In his second assignment of error, Newton argues that his conviction for possession of cocaine was against the manifest weight of the evidence. Specifically, he argues that the jury erred in convicting him of possession because he had used all of the cocaine in his possession prior to his arrest and did not knowingly possess the residue contained within his crack pipe. We disagree.
 {¶ 19} We incorporate the aforementioned criminal manifest weight standard of review into this assignment of error. R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Crack cocaine qualifies as a "controlled substance." See R.C. 3719.01(C) (defining "controlled substance" as any schedule I, II, III, IV, or V substance); R.C. 3719.41(A)(4) (listing cocaine as a schedule II substance). The possession of less than one gram of crack cocaine constitutes a felony of the fifth degree. R.C.2925.11(C)(4)(a).
 {¶ 20} "Possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C.2901.21(D)(1). Possession, however, may be either actual or constructive. State v. Lamb, 9th Dist. No. 23418, 2007-Ohio-5107, at ¶ 12, citing State v. Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it.State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. *Page 9 
 {¶ 21} Newton argues that the jury lost its way in convicting him of possession because he did not knowingly possess the residue in his crack pipe and R.C. 2925.11 is not a strict liability offense. The record reflects that Newton admitted that he owned the crack pipe that Officer Sumpter found on the ground when the EMT paramedics moved Newton. Newton further admitted that he had used the pipe to smoke crack cocaine. Officer Sumpter testified that he tested the pipe with a liquid reagent after finding it and discovered that it tested positive for the presence of cocaine. Kenneth Ross, a chemical analyst for the Bureau of Criminal Identification and Investigation, confirmed that the pipe contained a residue, which tested positive for cocaine. The fact that Newton mistakenly believed that he smoked the entire contents of the crack pipe does not detract from his conviction. This Court previously has upheld a cocaine possession conviction based solely upon the cocaine residue discovered in a defendant's crack pipe. See State v. Henderson, 9th Dist. No. 02CA008052, 2003-Ohio-1470, at ¶ 19-28. While the amount of cocaine a person possesses plays a role in the increasing severity of the offense, the possession of any amount of cocaine, no matter how small, triggers the application of R.C. 2925.11(A). See, generally, R.C.2925.11(C)(4)(a) (failing to provide a minimum amount of cocaine that a person must possess before such possession constitutes a violation). Thus, we cannot find that the jury lost its way in convicting Newton based on the cocaine residue present in his crack pipe. Newton's second assignment of error is overruled.
 III {¶ 22} Newton's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 carr, P. J. baird, J. CONCUR *Page 1